STRUTNER, APPELLANT, *v.* DISPATCH PRINTING CO., D.B.A. THE COLUMBUS DISPATCH ET AL., APPELLEES.

(No. 82AP-76—Decided August 10, 1982.)

*Messrs. Glander, Brant, Ledman & Newman, Mr. Charles E. Brant* and *Mr. J. Stephen Teetor,* for appellant.

*Messrs. Jones, Day, Reavis & Pogue, Mr. John W. Zeiger* and *Mr. Mark S. Coco,* for appellees.

WHITESIDE, P.J. Plaintiff appeals from a judgment of the Franklin County Court of Common Pleas and raises a single assignment of error, as follows:

"The judgment of the Court of Common Pleas, granting summary judgment for defendants-appellees, is contrary to law."

Plaintiff brought this action claiming an invasion of privacy predicated upon a newspaper article printed in the Columbus Dispatch, in which plaintiff was identified, by name and address, as the parent of Brent Strutner who not only had been arrested for assaulting a police officer in Willoughby, Ohio, but was being questioned as a suspect in a brutal rape-murder of an eight-year-old girl in Upper Arlington, Ohio. The trial court sustained defendants' motion for summary judgment, finding the matter to be "a newsworthy item of legitimate public concern."

Plaintiff first contends that some of the information printed was "private," rather than "public." In other words, plaintiff contends that he was not a public figure and was not involved in the police investigation rendering an invasion of privacy, the reporting of the fact that he is the father of the suspect. While plaintiff also contends that some of the information was inaccurate (such as the distance to his home from the murder scene), in this regard it is not material as to whether the information was factually accurate.

Recognition of the right of privacy in Ohio was reaffirmed recently in *Sustin* v. *Fee* (1982), 69 Ohio St. 2d 143 [23 O.O.3d 182], which reaffirmed the principle stated in paragraphs one and two of the syllabus of *Housh* v. *Peth* (1956), 165 Ohio St. 35 [59 O.O. 60], as follows:

"1. The right of privacy is the right of a person to be let alone, to be free from unwarranted publicity, and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned.

"2. An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

Within the context of the second paragraph of the syllabus of *Housh,* the claim here would have to be predicated either upon the publication of plaintiff's private affairs or an intrusion into his private activities. The newspaper article essentially did two things: (1) published the name and address of plaintiff; and (2) identified him as the father of a person being questioned by the police as a murder suspect. As to publicizing private affairs, it must be of a matter of which the public has no legitimate concern. As to intrusion into private activities, the intrusion must be wrongful, as well as done in a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. "Wrongful" does not require

that the intrusion itself be wrongful in the sense that there is no right to make any intrusion. Rather, "wrongful" may relate to the manner of the making of the intrusion as was the case in *Housh.*

Plaintiff's son had been arrested on assault charges in Willoughby and had been questioned by the police in connection with the Upper Arlington murder and was to be questioned again. Plaintiff's son, however, was not necessarily a prime suspect, and, as the last paragraph of the newspaper article indicated, there were still thirty-six persons who had been questioned but remained suspects and one hundred seven others who had not been questioned, although the newspaper article did not identify any suspect other than plaintiff's son. The specific language objected to by plaintiff is contained in one short paragraph of the newspaper article, which reads as follows:

"Strutner's apartment is about a mile east of the Waltham and Dublin Rds. murder site, while the home of his parents, Dr. and Mrs. Norman L. Strutner of 2705 Kent Rd. is only about a half mile away."

In opposition to defendants' motion for summary judgment, plaintiff submitted several later "follow-up" newspaper articles concerning plaintiff's son, none of which referred again to plaintiff. These articles repeatedly referred to plaintiff's son as a murder suspect and related information concerning his Willoughby arrest and conviction, as well as an earlier arrest in Grandview Heights on grounds of assault and resisting arrest and the plea-bargain disposition of those charges resulting in his pleading guilty to the resisting arrest charge in the Franklin County Municipal Court. Plaintiff also submitted his affidavit, (1) admitting his address, (2) admitting that the suspect was his son, (3) reiterating that his son was an emancipated adult, and (4) relating harassment and ridicule which he received allegedly as a result of the newspaper articles. In addition, plaintiff submitted an affidavit of the Upper Arling-

ton Chief of Police, indicating that he did not advise the Columbus Dispatch or any other member of the press of the name or address of plaintiff as being the father of the suspect. The chief even indicated that the Columbus Dispatch learned of the suspect's name from some other source since he did not reveal the name of the suspect but, instead, "attempted to avoid publicity concerning the questioning of Brent Strutner in the Dukat case." Although the chief did not state his justification for this action, he did state in his affidavit, "the newspaper publicity concerning this matter did not facilitate our investigation."

At this stage of the case, all of the evidence must be construed most strongly in favor of plaintiff, and the judgment for defendants is proper only if, when so construed, the evidence permits no other reasonable conclusion but that defendants are entitled to judgment in their favor under the applicable law.

The mere fact that defendants published plaintiff's address, as well as his name, does not give rise to a claim for invasion of privacy if the other information concerning plaintiff in the publication does not constitute an invasion of his right of privacy. See *McNutt* v. *New Mexico State Tribune* (App. 1975), 88 N.M. 162, 538 P. 2d 804, and Annotation, Publication of Address as well as Name of Person as Invasion of Privacy, 84 A.L.R. 3d 1159. Ordinarily, addresses of individuals are easily ascertainable by reference to such publicly obtainable books as telephone directories and city directories, as well as from such public records as those pertaining to voting, taxation and motor-vehicle registration. Since the chief of police indicates that he did not give the address of plaintiff to defendants, presumably it was obtained from one of these sources available readily to the public. Nor is there an invasion of privacy merely because a person suspected of a crime is further identified by setting forth the name and address of his parents, even though he is emancipated and no longer lives with his

parents. Such information is sufficiently newsworthy under the circumstances such that publication thereof cannot be considered to be an unreasonable intrusion into the parent's private affairs or private life. To be actionable, the type of invasion of privacy must be predicated upon an unreasonable intrusion into the private life of another. Here, the specific type of intrusion alleged apparently is the giving of publicity to plaintiff's private life by revealing his parentage of an apparent murder suspect, coupled with the location of his home. Despite the possible harm to an innocent suspect, it is a legitimate concern to the public to know the name of a person who is being questioned as a suspect in a vicious rape-murder, especially when coupled with the pending misdemeanor charges for assault and resisting arrest. Likewise, it is not unreasonable to note the name and address of the parents of such a murder suspect, even though the suspect is an adult not living with his parents.

As is often the case with respect to law, many writers have attempted to simplify the right of privacy, or the invasion of privacy, by dividing it into parts or types for clarification or simplification purposes. The most noted of these is that of Dean William L. Prosser in an article entitled "Privacy" in 48 Calif. L. Rev. 383 (1960). The noted Dean Prosser divided invasions of privacy into four distinct torts, noting there to be four distinct types of invasion of four different interests of persons. Since Dean Prosser prepared the Restatement chapter on invasion of privacy, the Restatement closely parallels Dean Prosser's four separate types of tortious invasion of privacy. See Section 652(A) of the Restatement of Torts 2d. Three of these are recognized in *Housh, supra:* (1) the wrongful intrusion into one's private activities noted in the Restatement as being an unreasonable intrusion upon the seclusion of another; (2) the unwarranted appropriation or exploitation of one's personality noted in the Restatement as being the appropriation of the other's name or likeness; and (3) the publicizing of one's private affairs with which the public has no legitimate concern noted in the Restatement as unreasonable publicity given to the other's private life.

The fourth type of invasion of privacy, espoused by Prosser and recognized by the Restatement is an invasion of privacy by publicity that unreasonably places one in a false light before the public. *Housh* neither recognized nor precluded this type of invasion of privacy from being actionable. More recently in *Sustin, supra,* the false-light invasion of privacy was referred to as being recognized in a footnote, citing Prosser on Torts and the Restatement. Whether this dicta forebodes eventual recognition of false-light invasion of privacy as being recognized as actionable in Ohio does not require resolution in this case. Rather, even assuming that plaintiff may maintain an action for an alleged false-light invasion of privacy, we find no basis in this case for the maintenance of such an action.

The false-light invasion of privacy is as offshoot from the law of slander and libel applicable in cases where false information has been published to the damage of the plaintiff but which is not actionable as libel or slander. A false-light invasion differs from other invasions or privacy in that the statement must be false; whereas, in other invasions, truth is not a defense, the intrusion into one's privacy rather than the falseness of the information being the gravamen of the action. As noted, however, like libel or slander, a false-light invasion is predicated upon publication of false information about another which places him in a false light before the public. Thus, in *Time, Inc.* v. *Hill* (1967), 385 U.S. 374, the United States Supreme Court placed the same limitations upon actions for false-light invasions of privacy that it had earlier placed upon actions for libel in *New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254. See, also, *Cantrell* v. *Forest City Publishing Co.* (1974), 419 U.S. 245.

*Time, Inc.,* involved a New York statute conferring a right of action for false-light invasions of privacy. In *Time, Inc.,* at page 388, the Supreme Court held that the statutory false-light invasion of privacy was constitutionally limited so as to preclude recovery for "false reports of matters of public interest in the absence of proof that the defendant published the report with knowledge of its falsity or in reckless disregard of the truth."

Here, there are no allegations of falsity as to salient matters. Brent Strutner was a suspect questioned by the police in the Dukat murder case and was involved in the two misdemeanor cases, one in Willoughby and one in Grandview. Plaintiff is the father of Brent Strutner and resides at the address set forth in the newspaper article. The only alleged inaccuracy in the articles is the distances stated with reference to plaintiff's home, his son's home and the murder scene. We find no basis for such an inaccuracy giving rise under the circumstances of this case to an actionable false-light invasion of privacy. Thus, even if the false-light invasion of privacy be recognized as a tort in Ohio, plaintiff could not recover for such a right under the evidence before the trial court, construed most strongly in favor of plaintiff, since the elements of that tort are not present. In fact, the complaint makes no allegation of falsity of any of the information contained in the newspaper article.

Rather, the complaint specifically alleges in paragraph six that, as a result of defendant's actions, "plaintiff's privacy was invaded and he and his family were made the subject of notoriety and public gossip, thereby suffering humiliation, embarrassment, shame and anguish." Thus, instead of false light, the complaint refers to notoriety and public gossip, which is more of the gravamen of an invasion of privacy through unreasonable publicity given to one's private life. For that type of invasion, ordinarily, the matter publicized must be of a kind that would be highly offensive to a reasonable person under the circumstances, as well as one that has no legitimate concern to the public. We cannot quarrel with a contention that reasonable minds might conclude that it would be highly offensive to a reasonable person to have publicized the fact that his son is a suspect and is being questioned by the police with respect to the rape-murder of an eight-year-old girl, and, since it has been alleged, we must accept as fact the allegation that such publicity has made plaintiff and his family "the subject of notoriety and public gossip," and has subjected them "to the attention of curiosity seekers," and "to ridicule and vindictive acts of other persons." Likewise, we must accept as fact that plaintiff has suffered "humiliation, embarrassment, shame and anguish."

We are not unsympathetic to plaintiff. Any parent in his position would feel the anguish, not just from the embarrassment to himself but the anguish of concern for his son, especially, as plaintiff apparently feels, if the son be erroneously suspected in the murder case. Such anguish, humiliation, embarrassment or shame, however, cannot give rise to a cause of action unless the publicity is unreasonable and involves a matter not of legitimate concern to the public. Here, we are compelled to find, as did the trial court, that the matter concerning plaintiff publicized by defendants is of legitimate concern to the public for the reasons we have stated above, even assuming that a more sympathetic and considerate reporter would not have included all of the information concerning plaintiff himself in the newspaper article. Accordingly, the assignment of error is not well taken.

For the foregoing reasons, the assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

REILLY and NORRIS, JJ., concur.