PENWELL, APPELLANT, *v.* TAFT BROADCASTING CO. ET AL., APPELLEES.

(Nos. CA83-07-014 and -015—Decided
March 19, 1984.)

*Mr. Charles H. Wilson, Jr.,* for appellant.

*Messrs. Taft, Stettinius & Hollister* and *Mr. John J. McCoy,* for appellee Taft Broadcasting Co. (WTVN-TV).

*Mr. John H. Roszmann,* for appellee Robert W. McArthur.

*Per Curiam.* This cause came on to be heard upon an appeal from the Common Pleas Court of Fayette County.

A single complaint was filed by the appellant, Billy Gene Penwell, Jr., against Robert W. McArthur, as Sheriff of Fayette County, Ohio, and numerous others, alleging negligence, false arrest and imprisonment, and against Taft Broadcasting Co. ("Taft"), for invasion of privacy. The complaint was dismissed as to all defendants and separate appeals were filed from the granting of motions for summary judgment in favor of Taft and McArthur. These appeals were consolidated, the causes having arisen from the same set of facts.

Appellant may properly be cast as an "innocent bystander" in a police drug raid, based upon an extensive undercover investigation in the Fayette County area, during which several people were arrested.

Appellant and his wife, residents of Washington Court House, Ohio, attended an evening auction and, on their way home, stopped for a drink at the H & H Bar. Shortly after they arrived at the bar, their evening was interrupted by a "drug bust." The officers and agents participating in the "bust" ordered the appellant to place his hands over his head; he was frisked, handcuffed and removed from the bar.

Appellant was transferred to the sheriff's department, strip searched and then detained for about two hours. After appellant was interrogated by sheriff's deputies and the prosecuting attorney, it was determined that he was not one of those persons to be served with an indictment and that his arrest and custodial interrogation were the result of mistaken identity. The appellant was subsequently released from custody and no charges were ever brought against him relating to this incident.

A film crew from Taft's WTVN television station, having been alerted by the police to the potential news event, arrived at the bar with the police and videotaped appellant's arrest and removal from the bar. This footage was utilized by Taft during a number of WTVN news programs.

Appellant's innocence was brought to the attention of the management of WTVN by appellant's counsel, who made a request that the videotape footage of the arrest no longer be broadcast. No request for retraction was made.

I

In his sole assignment of error in the appeal No. CA83-07-014, appellant argues

that the trial court improperly granted Taft's motion for summary judgment.

The appellant contends that there was an actionable invasion of his right to privacy by Taft in: (a) Taft's multiple publication of the videotaped footage of his arrest *before* being advised of the appellant's innocence, and (b) Taft's repeated publication of such footage *after* receiving notice of the appellant's innocence.

## A

Both facets of the claim are argued to be the publication of the appellant's *private* affairs with which the public has no legitimate concern.

The scope of one's liability for publicizing the private matters of another is found in Section 652D of the Restatement of the Law 2d, Torts (1977) 383, as follows:

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the matter publicized is of a kind that

"(a) would be highly offensive to a reasonable person, and

"(b) is not of legitimate concern to the public."

See *Sustin* v. *Fee* (1982), 69 Ohio St. 2d 143, 145 [23 O.O.3d 182].

The issues raised by appellant under his single assignment of error are not viable unless the record before the trial court establishes that the publication of the appellant's arrest and removal from the bar was the publication of his *private* affairs.

As Taft initially discerns and argues, the publication was of the appellant's arrest in a public place. This court further notes that the acts published were not those of the appellant, but those of the law enforcement authority directed against the appellant.

Appellant submits no authority for the proposition that his arrest in a public bar and his removal from the bar to an awaiting bus were private affairs which would provide an actionable basis for recovery.

To the contrary, cases developing and interpreting the right of privacy in Ohio weigh heavily against the appellant. See *Housh* v. *Peth* (1956), 165 Ohio St. 35 [59 O.O. 60]; *Sustin, supra;* and the definitive opinions of Judge Whiteside in *Strutner* v. *Dispatch Printing Co.* (1982), 2 Ohio App. 3d 377, and of Judge Rice in *Jackson* v. *Playboy Enterprises* (S.D. Ohio 1983), 574 F. Supp. 10. We must conclude, as Judge Rice opined in *Playboy, supra,* at 13, that:

"* * * in order to state a cause of action for publication of facts concerning his private life, the plaintiff must establish that the matter publicized was not left open to the public eye, but rather, was truly a matter of his private concern only."

Were it established that appellant was entitled to a degree of privacy in a public place for acts of a private nature, it would still be necessary for the appellant to demonstrate that the publication was of matters which would be highly offensive to a reasonable person. Due to our resolution of the threshold issue, we need not discuss the degree of offensiveness of the publication herein.

The record before the trial court established that the appellant's arrest was part of the largest drug raid in Fayette County's history and that, in addition to Taft's television coverage, appellant's arrest was reported by two major newspapers in the area.

The videotape footage was an accurate portrayal of the events of the evening as they related to the appellant's arrest and removal from the H & H Bar and we must conclude that the record before the trial court clearly established that appellant's arrest during the "drug bust" was a matter with which the public had a legitimate concern.

Our conclusion is supported by the Comments to Section 652D of the Restatement of the Law 2d, Torts. Com-

ment *f* states at 389 that persons who are so unfortunate as to be present at the scene of a crime are regarded as properly subject to the public interest and publishers are permitted to "* * * satisfy the curiosity of the public as to its heroes, leaders, villains and victims * * *."

## B

Appellant could, arguably, have an actionable claim based upon the "false light" theory of recovery which Presiding Judge Whiteside acknowledges in *Strutner, supra.* Section 652E of the Restatement of the Law 2d, Torts (1977), at 394, provides the scope of liability for this theory and states that:

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

"(a) the false light in which the other person was placed would be highly offensive to a reasonable person, and

"(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

See *Sustin, supra,* at 145.

Appellant argues for the adoption of this concept in his contention that publication of his arrest and removal from the bar *after* Taft had been advised of his innocence constituted an actionable invasion of his privacy by presenting him in a "false light."

We would seriously entertain appellant's argument on the merits if it was supported by facts properly before the trial court on Taft's motion for summary judgment. Civ. R. 56(C) determines the matters which can be considered by the trial court on a party's motion for summary judgment as follows:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and writ-

ten stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact * * *. No evidence or stipulation may be considered except as stated in this rule. * * *"

Civ. R. 56(E) provides as follows:

"Supporting and opposing affidavits *shall be made on personal knowledge,* shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * * When a *motion for summary judgment is made* and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." (Emphasis added.)

The supporting affidavits produced by the movant, Taft, clearly meet the requirements of Civ. R. 56. The affidavits of Miles Resnick and David A. Parr supporting Taft's motion for summary judgment were made upon personal knowledge, the facts set forth therein would be admissible and it is affirmatively established that the affiants were competent to testify to the matters therein. These supporting affidavits established that there was *no* publication of the videotaped arrest of the appellant after Taft was apprised by appellant's counsel that no charges were ever filed against the appellant following his arrest.

The responding affidavit, of which appellant's counsel was the affiant, was, in large part, appropriate and admissible. In fact, the affidavit confirms a substantial portion of Taft's supporting documents. However, this affidavit contains the following declaration directed toward the question of post-notice publication of the videotape footage:

"In the next few days or the following weekend, affiant was contacted by his plaintiff and advised that the filmclip had, in fact, been shown again, said showing

occurring on one or more times several days after the affiant visited the studio."

It is argued by Taft that this portion of the supporting affidavit is hearsay, is not admissible into evidence and could not have been properly considered by the trial court in reaching its decision on Taft's motion for summary judgment pursuant to Civ. R. 56(E).

It is patent that Evid. R. 602 would be sufficient to preclude Wilson from testifying on this matter due to a lack of personal knowledge of the matter. The statement constitutes hearsay as defined in Evid. R. 801(C), is inadmissible as provided by Evid. R. 802, and fails to qualify as an exception to the hearsay rule as provided in Evid. R. 803. As such, the statement could not be considered by the trial court in ruling on the motion for summary judgment. Civ. R. 56(E).

This court further finds that there was nothing before the trial court to create an issue of fact as to appellant's bare allegation of publication by Taft after notice was given to Taft of the appellant's innocence. The trial court properly sustained Taft's motion for summary judgment.

We find that the appellant's sole assignment of error in the case No. CA83-07-014 is not well-taken.

## II

The appellant also appeals from the granting of a motion for summary judgment in favor of appellee McArthur in the case No. CA83-07-015. Appellant's sole assignment of error is set forth as follows:

"The Trial Court committed error to the prejudice of plaintiff in granting the Motion of defendant, Robert W. McArthur, for Summary Judgment and for granting final judgment to said defendant."

The circumstances of appellant's arrest, transportation and detention are not in dispute, nor is appellant's subsequent release from custody without charges being filed against him.

As noted above, Civ. R. 56 provides that to prevail upon a motion for summary judgment, the moving party must establish that there was no genuine issue as to any material fact and that the moving party was entitled to judgment as a matter of law. The trial court must construe the matters properly before it most strongly in favor of the party against whom the motion is directed. Additionally, before sustaining the motion, a trial court must conclude that reasonable minds could come to but one conclusion and that conclusion must be against the adverse party.

It is conceded in this cause that appellant was not a person against whom the Fayette County Grand Jury had returned a secret indictment for service on the evening of appellant's arrest. Appellant's warrantless arrest is acknowledged and his characterization as an "innocent bystander" is not seriously challenged.

McArthur accepts responsibility for his own acts as well as the acts of those who operate under his direction and authority and acknowledges that this would necessarily include the acts of his deputies and others seeking to enforce the law at his request.

It is the contention of McArthur, however, that he is not responsible or liable for the acts of those who are not under his direction or control. Specifically, he argues that a number of agents from the Ohio Department of Liquor Control were involved in the raid and that those agents were under the direction and control of the Department of Liquor Control.

Inexplicably, McArthur contends that the affidavit of James A. Kiger, Prosecuting Attorney of Fayette County, Ohio, filed in support of McArthur's motion for summary judgment, clearly shows that appellant, if arrested, was arrested by liquor agents. The original of the affidavit as it is found in the record herein fails to reflect such an averment. In addition,

while there is an abundance of evidence indicating that McArthur was in charge of the police operation, the depositions, affidavits and answers to interrogatories fail to establish that agents of the Department of Liquor Control, acting independently, caused the arrest and detention of the appellant.

While McArthur additionally takes the position that appellant's arrest without a warrant was the result of appellant's failure to obey a lawful order of a law enforcement officer pursuant to R.C. 2917.13,[1] this provision of the Criminal Code is clearly inapposite. Even if this statute could be made applicable by the enhancement of the term "emergency" (and we doubt that it could), it would appear to be a sham issue since no such charges were ever filed against appellant.

This court can only conclude that the trial court committed error in granting McArthur's motion for summary judgment.

There being significant and genuine issues of material fact which must be resolved in this cause, we hereby find appellant's sole assignment of error to be well-taken, reverse the judgment below in the case No. CA83-07-015 and remand this cause for further proceedings not inconsistent with Part II of this decision.

It is the order of this court that the judgment in case No. CA83-07-015 be, and the same hereby is, reversed and this cause is remanded for further proceedings not inconsistent with this decision and that the judgment in case No. CA83-07-014 be, and the same hereby is, affirmed.

*Judgment affirmed in case No. CA83-07-014. Judgment reversed and cause remanded in case No. CA83-07-015.*

KOEHLER and JONES, JJ., concur.

HENDRICKSON, P.J., concurs separately.

HENDRICKSON, P.J., concurring. I concur with the majority in case No. CA83-07-014. Also, I concur in the judgment in case No. CA83-07-015 on the basis that summary judgment is not applicable since there is a question of fact which must be resolved. However, at this stage of the proceedings, I cannot accept the premise that the failure to file charges against the appellant provides the basis for an inference that the claim of misconduct on the part of appellant is a sham. After all, the case has not been tried and we do not know what additional evidence, if any, will be introduced. Nevertheless, we should recognize that when someone refuses to obey an order during the arrest of such a large number of people, the failure to cooperate may, upon the spur of the moment, be considered to be more serious than it appears upon review at a later date. Therefore, if we cast such reflection upon law enforcement agencies, we will discourage them from either doing justice at a later date by correcting their mistakes, or giving someone a "break" if the circumstances warrant such action.

---

[1] R.C. 2917.13, captioned "Misconduct at an emergency" in Page's Ohio Revised Code Annotated, provides that no person shall knowingly hamper the lawful operations of any law enforcement officer at the scene of an emergency or fail to obey the lawful order of any law enforcement officer in his duties at the scene of an emergency.