Willie **REEVES,** Jr., Plaintiff,

v.

**FOX TELEVISION NETWORK,** et al., Defendants.

No. 1:96 CV 0281.

United States District Court, N.D. Ohio, Eastern Division.

April 30, 1997.

Avery S. Friedman, Friedman & Associates, Cleveland, OH, Kenneth D. Myers, Cleveland, OH, for Plaintiff.

Michael Kevin Farrell, Louis A. Colombo, Baker & Hostetler, Cleveland, OH, for Defendants Fox Television Network, Barbour–Langley Productions.

Michael Kevin Farrell, Louis A. Colombo, Baker & Hostetler, Cleveland, Oh, Sharon Sobol Jordon, Patrick Mark Dana Dukes, City of Cleveland, Dept. of Law, Cleveland, OH, for Defendant City of Cleveland.

## MEMORANDUM OF OPINION AND ORDER

NUGENT, District Judge.

This matter is before the Court on Defendants, Fox Television Network and Barbour Langley Productions, Motion for Summary Judgment. (Document # 17). For the reasons stated below, Defendants' Motion is GRANTED.

### Procedural History

Plaintiff, Willie Reeves, Jr., filed a complaint on February 9, 1996, against defendants Fox Television Network ("Fox"), the network which airs the television show "COPS," Barbour–Langley Productions ("Barbour"), the producer of the television show "COPS," and the City of Cleveland ("Cleveland")[1]. Plaintiff asserts that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343(3) and 1343(4) because Plaintiff, a private citizen of the United States, is bringing this action pursuant to the Civil Rights Act of 1871 and 42 U.S.C.

§ 1983 seeking redress for Defendants' alleged violation of his rights under the First, Fourth and Fourteenth Amendments of the United States Constitution. Plaintiff also asserts pendent state claims under Article I, Sections 11 and 14 of the Ohio Constitution and Ohio common law pursuant to 28 U.S.C. § 1367.

Plaintiff's Complaint arises over his arrest by the Cleveland police on or about August 30, 1993, for felonious assault.[2] Plaintiff contends that he was in the shower after a physical altercation with another man, when the Cleveland police rang his doorbell. One of the police officers asked Plaintiff if they could enter his house to talk about the earlier altercation. Plaintiff opened his door and said that he had to put away his dog. The police entered after the Plaintiff had put away his dog. A Barbour camera crew, consisting of a cameraman and a sound man, which was accompanying one of the police officers for the television show "COPS," entered with the police and videotaped Plaintiff's encounter with the police and his arrest. Some of the footage of Plaintiff's arrest was aired as part of a "COPS" television show on Fox on more than one occasion. Fox was not present at Plaintiff's residence and took no part in compiling the "COPS" show which contained footage of Plaintiff. Fox reviewed the "COPS" show at issue to be certain it met broadcast standards and broadcast the show.

Plaintiff's Complaint alleges five counts against Barbour and Fox based on the broadcast of the "COPS" show and two counts based on the entry onto Plaintiff's property as follows: Invasion of Privacy/Intrusion, False Light; Invasion of Privacy, Disclosure, False Light; Invasion of Privacy, Appropriation; Trespass; and, Intentional and Negligent Infliction of Emotional Distress. Fox and Barbour filed a Motion for Summary Judgment on October 16, 1996, with accompanying affidavits and depositions.[3] Defen-

---

1. "COPS" is a television show which depicts actual police work by the police forces in various cities throughout the country.

2. Plaintiff was charged with felonious assault and later pled guilty to a fourth degree felony and received a suspended prison sentence.

3. Defendant City of Cleveland filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on July 1, 1996, on the ground that Plaintiff's claims against it are barred by the applicable statute of limitations. That motion has been addressed in a separate Memorandum and Opinion, and was

dants argue that there are no genuine issues of material fact in dispute and that, as a matter of law, Plaintiff is not entitled to recover under any of the tort theories that he has asserted. Plaintiff filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment and Fox and Barbour filed a Reply Memorandum in Support. A hearing was held on Defendants' Motion on January 15, 1997. The entire videotape taken by the Barbour crew on the night of Plaintiff's arrest, as well as the short segment of the "COPS" television show featuring Plaintiff's arrest, was viewed by the Court and the parties at the hearing.

### Law and Argument

#### I. Standard for Summary Judgment

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *see also*

*U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* at 248–49, 106 S.Ct. at 2510–11 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995). The text of FRCP 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set

granted by a Judgment Entry filed contemporaneously with this Memorandum of Opinion and Judgment Entry. Only Fox and Barbour (collectively "Defendants or Media Defendants") have moved for summary judgment. The City of Cleveland is not a party to this motion and only the liability of the Media Defendants is at issue here.

forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

## II. Plaintiff's Counts Alleging Injury Due to the Broadcast

### A. Invasion of Privacy by Publication of Private Facts

In Count IV of his Complaint, Plaintiff asserts that Defendants' repeated broadcasts of the videotape invaded his privacy by disclosing private facts about him. Plaintiff fails to identify in his Complaint precisely what private facts about him were allegedly disclosed by Defendants. In his deposition Plaintiff stated that his address, the police escorting him from his home in handcuffs, Janine Simkins' description of him, and the police looking in his garbage cans were private facts about him which were disclosed by Defendants. (Plaintiff's Dep. at 43–44.)

■ Under Ohio law, there is a two step analysis to determine whether a plaintiff has established a claim under the "publication of private facts" theory of invasion of privacy. The plaintiff must demonstrate both that the facts publicized are not of legitimate public concern and that the facts disclosed really are private and were not left open to the public eye. *See Seta v. Reading Rock, Inc.,* 100 Ohio App.3d 731, 739, 654 N.E.2d 1061, 1067 (Butler App.1995); *Penwell v. Taft Broadcasting Co.,* 13 Ohio App.3d 382, 384, 469 N.E.2d 1025, 1028 (Fayette App.1984).

■ Plaintiff has failed to establish either branch of his claim. The alleged private facts published in the broadcast concern a matter of legitimate public concern. The "COPS" segment shows the Cleveland Police responding to a call of "gunshots fired"; talking to the man who Plaintiff allegedly whipped with a pistol and a witness to that beating, Mrs. Simkins; the police following up on Mrs. Simkins' description of Plaintiff and his address; the police finding Plaintiff's house; entering and talking with Plaintiff, and, arresting Plaintiff and escorting him to the police car in handcuffs. Arrests and police investigation of violent crimes are matters of legitimate public interest. *See Penwell,* 469 N.E.2d at 1027–28 (broadcast of videotape of plaintiff's arrest does not constitute publication of private facts); *Strutner v. Dispatch Printing Co.,* 2 Ohio App.3d 377, 378, 442 N.E.2d 129, 133 (Franklin App.1982) ("[I]t is a legitimate concern to the public to know the name of a person who is being questioned as a suspect" in a violent crime.) The broadcast at issue did not discuss or reveal in any way any personal or private information (i.e., family information, medical history, prior criminal history, etc.) about Plaintiff unrelated to his arrest for felonious assault. Clearly, the Cleveland Police Department's response to a call regarding a violent crime, their investigation and arrest of a suspect are all matters of legitimate public concern.

■ Moreover, the facts which Plaintiff claims were disclosed in this case are not private facts. Plaintiff's address is not private, it appears on his Complaint in this case, and in other public records. The broadcast of information that is publicly available does not constitute publication of private facts. *Strutner,* 442 N.E.2d at 133. Similarly, Plaintiff being escorted to a police car in handcuffs, and the police looking through Plaintiff's garbage were clearly visible from the street and thus were not "private". *Penwell,* 469 N.E.2d at 1028 (broadcast of plaintiff's arrest in public place not actionable); *Jackson v. Playboy Enterprises, Inc.,* 574 F.Supp. 10, 13 (S.D.Ohio 1983) (matters taking place in public are not private.) Finally, Ms. Simkins' physical description of Plaintiff is not a private fact. Plaintiff's physical appearance is readily apparent to anyone who looks at him. Accordingly, Plaintiff has failed to establish a claim of invasion of privacy by publication of private facts.

### B. False Light Invasion of Privacy

■ Plaintiff attempts to assert a claim for false light invasion of privacy in Counts III and IV of the Complaint. Ohio does not recognize the tort of "false light" invasion of privacy. *Angelotta v. American Broadcasting Corp.,* 820 F.2d 806, 808 (6th Cir.1987);

*Brooks v. American Broadcasting Cos.,* 737 F.Supp. 431, 442 (N.D.Ohio 1990), *aff'd,* 999 F.2d 167 (6th Cir.), *cert. denied,* 510 U.S. 1015, 114 S.Ct. 609, 126 L.Ed.2d 574 (1993); *M.J. DiCorpo, Inc. v. Sweeney,* 69 Ohio St.3d 497, 507, 634 N.E.2d 203, 210 (1994); *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 372, 453 N.E.2d 666, 670 (1983). Accordingly, Plaintiff's claims for false light invasion of privacy are dismissed.

### C. Invasion of Privacy by Appropriation

■ In Count V of his Complaint, Plaintiff alleges that Fox and Barbour's broadcasts constitute an "invasion of privacy in that the broadcasts appropriated the plaintiff's name and/or likeness." The Ohio Supreme Court has stated: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy...." *Vinci v. American Can Co.,* 9 Ohio St.3d 98, 459 N.E.2d 507 (1984) (Para. 2 of the syllabus). However, to maintain this cause of action, a plaintiff must allege and support something more than the incidental publication of his name or likeness. The defendant must have:

appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness. Thus, in order to state a cause of action for invasion of privacy by appropriation, the complaint must allege that plaintiff's name or likeness has some intrinsic value, which was taken by defendant for its own benefit, commercial or otherwise.

*Powell v. The Toledo Blade Co.,* 19 Media L. Rep. 1727, 1991 WL 321960 (Lucas C.P.1991) *citing Jackson v. Playboy Enterprises, Inc.,* 574 F.Supp. 10, 13 (S.D.Ohio 1983).

■ Plaintiff's name and likeness has no intrinsic value. The Defendants did not *include* him in the "COPS" show because of his name, personality or prestige. The Barbour film crew was simply following a Cleveland Police officer and videotaped Plaintiff because he happened to be involved in a crime which was investigated by the police officer they were following. It is clear that Defendants did not videotape Plaintiff because of any intrinsic value associated with Plaintiff's name or likeness.

■ As the Supreme Court of Ohio noted:

No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness.

*Zacchini v. Scripps–Howard Broadcasting Co.,* 47 Ohio St.2d 224, 231, 351 N.E.2d 454, 459 (1976) *rev'd on other grounds,* 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977), quoting with approval, proposed Restatement of the Law 2d, Torts, § 652C (Draft No. 13, 1967); see also *Brooks v. American Broadcasting Companies, Inc.,* 737 F.Supp. 431 (N.D.Ohio 1990) (Claim for invasion of privacy based on appropriation of name or likeness of another is not applicable when person's name or likeness is used in context of general news reporting; fact that news organization may operate for profit does not alter this conclusion, nor is it important whether particular news program is merely for information or whether it intends to entertain as well.)

As there is no evidence in this record to suggest that Plaintiff's name or likeness has any intrinsic value which Defendants' appropriated, Defendants' are entitled to summary judgment on Plaintiff's invasion of privacy by misappropriation claim.

### D. Intentional and Negligent Infliction of Emotional Distress

Plaintiff asserts claims for Intentional and Negligent Infliction of Emotional Distress in Counts VII and VIII of his Complaint. In

both counts Plaintiff alleges that he has suffered substantial personal humiliation, significant emotional distress, physical injury and severe stress, loss of the quality of life and severe mental distress.

 Ohio courts have recognized negligent infliction of emotional distress may provide the basis for a claim for relief.[4] *Schultz v. Barberton Glass Co.*, 4 Ohio St.3d 131, 447 N.E.2d 109 (1983); *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983). The Ohio Supreme Court determined that in order to recover under this claim a plaintiff must demonstrate serious emotional distress—"[b]y the term 'serious' we of course go beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is both severe and debilitating." *Paugh*, 6 Ohio St.3d at 78, 451 N.E.2d at 765. The Court listed some examples of serious emotional distress including, traumatically induced neurosis, psychosis, chronic depression, or phobia. *Id.* at 78, 451 N.E.2d at 765. *See also, Angelotta v. ABC*, 12 Media L. Rep. 1489, 1494 (N.D.Ohio 1985), *aff'd*, 820 F.2d 806 (6th Cir.1987) ("anxiety, loss of reputation, embarrassment and loss of self-esteem do not amount to serious emotional distress"); *Lynn v. Allied Corp.*, 41 Ohio App.3d 392, 401, 536 N.E.2d 25, 35 (Cuyahoga App.1987) (being "distraught and hysterical" does not constitute serious emotional distress).

 Plaintiff has not submitted any evidence that he has suffered severe emotional distress following the broadcasts. Indeed, he has not even responded to Defendants' review of Plaintiff's deposition testimony where he admits that he has not sought medical treatment for any emotional distress arising from the videotaping and the broadcast; that no doctor told him that his physical condition deteriorated as a result of the broadcast; and, that he had not taken any medication to treat any condition arising out of the videotaping or the broadcast. In short, there is no evidence to suggest that Plaintiff suffers from severe emotional distress, much less that Defendants' Fox and Barbour's actions caused Plaintiff's alleged severe emotional distress.

 Similarly, Plaintiff has offered no evidence to support his claim for intentional infliction of emotional distress. In order to recover under this theory, Plaintiff must demonstrate both, that he has suffered serious emotional distress as a result of Defendants' conduct, and that Defendants' conduct has been:

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666, 671 (1983). As noted above, Plaintiff has submitted no evidence to support any claim that he has suffered serious emotional distress. Moreover, the facts do not support a finding that Defendants' conduct in videotaping Plaintiff's encounter with the police and broadcasting a portion of that videotape on the "COPS" television show constitutes outrageous and extreme conduct, beyond all possible bounds of decency.[5]

---

4. The cases recognizing the tort of negligent infliction of emotional distress generally involved a bystander to an accident rather than a person who claims to be a victim of an intentional tort. When, as here, the claim involves allegedly tortious conduct of an intentional nature, negligent infliction of emotional distress does not apply. *See Haller v. Phillips*, 69 Ohio App.3d 574, 579, 591 N.E.2d 305, 308 (Franklin App.1990).

5. Plaintiff contends that Defendants' conduct was outrageous because they videotaped Plaintiff while he was dressed in a towel and/or naked.

The videotape does not show Plaintiff naked. Particularly in the segments included in the "COPS" show, Plaintiff is always covered. Defendants merely videotaped the activities occurring in Plaintiff's dining room. The camera did not follow Plaintiff around his house. Indeed, during the "COPS" segment, Plaintiff is shown wearing a towel and sitting at a table, which covers most of Plaintiff, or being arrested and led out of his house, at which point he is fully dressed.

### III. Plaintiff's Claims alleging injury as a result of Defendants' Entry into his Home

In Counts II and VI of his Complaint, Plaintiff asserts claims for invasion of privacy by intrusion and trespass based on Defendants' entry into his home to videotape his encounter with the Cleveland Police.[6] Defendants assert that Plaintiff cannot recover for trespass or intrusion because Plaintiff voluntarily permitted the camera crew to enter his home with the police and videotape what occurred.

 It is well settled that Plaintiff must allege and prove that Defendants' entry into his home was unauthorized in order to maintain a cause of action for trespass. *See Allstate Fire Ins. Co. v. Singler,* 14 Ohio St.2d 27, 29, 236 N.E.2d 79, 81 (1968). Similarly, if a plaintiff consents or willingly subjects himself to the alleged intrusion, there can be no recovery for invasion of privacy by intrusion. *See Leichtman v. WLW Jacor Communications, Inc.,* 92 Ohio App.3d 232, 236, 634 N.E.2d 697, 700 (Hamilton App. 1994) (plaintiff who willingly entered radio studio and consented to make appearance on radio show could not recover for invasion of privacy based on talk-show hosts' conduct during interview); *Sowards v. Norbar, Inc.,* 78 Ohio App.3d 545, 554, 605 N.E.2d 468, 474 (Franklin App.1992) (consent, if proven, is a defense to invasion of privacy by intrusion claim).

 Plaintiff does not dispute that consent is a defense to Plaintiff's claims for trespass and intrusion. Rather, Plaintiff argues that he did not consent to Defendants' entry into his home, their videotaping his encounter with the Cleveland Police, or the broadcast of portions of the videotape in the "COPS" television show. Thus, Plaintiff asserts that there is a genuine issue of material fact regarding whether he consented to Defendants' alleged intrusion. While conflicting statements of the plaintiff and defendant regarding consent would ordinarily prevent summary judgment, in this case the videotapes and Plaintiff's deposition testimony clearly show that Plaintiff consented to Defendants' entry into his home and the recording of his encounter with the police. The raw videotape taken by the camera crew shows the police knocking on the house's outside door and on the Plaintiff's interior door. After several minutes, Plaintiff came to the door, a police officer said "Willie, can we come in?" and Plaintiff opened the door wearing only a bath towel and said he had to put his dog away. Plaintiff put his dog away and then everyone came in. In his deposition testimony Plaintiff agreed that he opened the door and allowed the police to enter. (Plaintiff's Dep. at p. 34) Plaintiff acknowledged that he knew that he had the right to keep the police out of the house. (Plaintiff's Dep. at pp. 31, 47) Plaintiff further testified that he knew there was a camera and that he saw the cameraman follow the police into his house. (Plaintiff's Dep. at pp. 28–33.) Plaintiff testified that he did not ask the police or the cameraman to leave his house or ask the cameraman to stop filming at any time during the encounter. (Plaintiff's Dep. at p. 34) Plaintiff agreed that the "COPS" video segment featuring Plaintiff accurately depicted what occurred at his house that night. (Plaintiff's Dep. at pp. 40–41) Both the unedited videotape and the "COPS" video segment confirm that Plaintiff voluntarily allowed the police and the cameraman to enter his home. The video shows the Plaintiff and police having a calm discussion of the events surrounding Plaintiff's earlier altercation, the police finding and confiscating Plaintiff's guns and arresting him. There is no evidence from the videotapes to indicate that Plaintiff did not willingly allow the police or the camera crew into his house.

Plaintiff acknowledges that he let the police in but claims that he never gave oral permission to either the police or the camera-

---

6. It is clear that Defendant Fox was not present at Plaintiff's home during the videotaping of Plaintiff's encounter with the police. Its only role was to review the "COPS" episode that included Plaintiff to assure that it met broadcast standards and to broadcast the show. Accordingly, Fox is entitled to summary judgment on all

man to enter his house.[7] Plaintiff appears to be arguing that unless a homeowner gives specific oral consent to each person in a group of people that enter his home after the homeowner opens the door to let them in, every person after the first person to enter the home is a trespasser or intruder despite the fact that the homeowner opened his door and admitted them; was aware of their presence; and did not object. Plaintiff offers one Wisconsin case in support this novel position.[8] It is clear from Plaintiff's testimony and from the videotapes that Plaintiff consented to the presence of both the police and the cameraman. Accordingly, there was no trespass or intrusion and thus, Plaintiff cannot maintain a claim for invasion of privacy by intrusion.

Plaintiff further argues that even if he consented to Defendants' entry and videotaping, he did so under duress. The parties discuss the law of duress, whether it concerns economic duress or duress in a law enforcement search context, interchangeably. The standard to review whether a person's consent was given voluntarily or was the product of duress depends on whether the consent was given in a criminal/law enforcement situation or in a civil/commercial context. The legal standard to apply in this case is somewhat confusing because Plaintiff's consent to enter his home was given in a criminal law enforcement situation but the parties Plaintiff seeks to hold liable for trespass and intrusion in this civil action are non-law enforcement media defendants. The issue of which standard should be applied need not be determined in this case because the facts demonstrate that Plaintiff's consent for the police and the Defendants to enter his home was voluntarily given and was not the product of duress under either legal standard.

In the criminal/law enforcement context, a court must review the "totality of the circumstances" to determine whether the consenting party's consent was voluntary or was the product of duress. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The factors to be reviewed include whether force or the threat of force was used; whether threats regarding the consequences of refusing consent were made; whether the consenting party was in custody; whether the consenting party knew of his right to refuse to consent; and the age, intelligence and education of the consenting party. *Id.; U.S. v. Riascos–Suarez*, 73 F.3d 616, 625 (6th Cir.1996); 1 William E. Ringel, Searches & Seizures, Arrests and Confessions, §§ 9.3(b)(1)–9.3(b)(4) (2d ed.1996). No one factor is *per se* coercive.

Plaintiff claims that his consent was coerced because "although he may have realized he had the right to ask them [the media Defendants] to leave, he was under arrest almost from the moment the police entered his house, and he was not free to exercise his

---

claims which are based on the entry into Plaintiff's home or the videotaping at Plaintiff's home.

**7.** Plaintiff suggests that if he consented at all, it was only to the police, not the Media Defendants; that the police inappropriately brought in the Media Defendants, and both the police and the Media Defendants are liable for the unpermitted entry. The cases cited by Plaintiff in support of this position are inapplicable here because the issue in those cases was whether a law enforcement agency overstepped the scope of a search warrant when they invited the media or another third person along when they executed a search warrant. *See, Ayeni v. Mottola,* 35 F.3d 680 (2d Cir.1994); *Bills v. Aseltine,* 958 F.2d 697 (6th Cir.1992). In *Ayeni* and *Bills* the actions were against the law enforcement agents or agencies, not the third person or media. Moreover, the search warrants in both cases defined the people who were permitted to execute the warrant. There was no warrant in this case. The police

and the camera crew entered Plaintiff's home with Plaintiff's consent.

**8.** The one case cited by Plaintiff, *Prahl v. Brosamle*, 98 Wis.2d 130, 295 N.W.2d 768 (Wis.App. 1980), confirms that consent is a defense to trespass and that consent may be express or it may be implied from the conduct of the plaintiff, from the relationship of the parties or from custom. In *Prahl* the defendant argued consent from custom, however the Wisconsin appellate court determined that there was no evidence of custom between the parties in the record precluding dismissal of the plaintiff's complaint. The Court noted that consent will not be implied by the plaintiff's failure to object to entry in advance or during distracting events. In this case Plaintiff's actions clearly demonstrate consent to enter and his deposition statements to the effect that he thought he would be better off with the camera recording the encounter emphasize Plaintiff's consent.

will." (Plaintiff's Response at p. 20.) Plaintiff also claims that he thought the police could get rougher with him if he objected to the presence of the Media Defendants. Plaintiff's claims do not support a finding of duress when reviewing the totality of the circumstances. Plaintiff testified that he knew he had the right to deny entry to the police and the Media Defendants but chose not to deny entry. While the police did arrest Plaintiff at some point during the encounter at his home, Plaintiff was not in custody until he was led out of his house in handcuffs. No force of any kind, or threat of force, was used against Plaintiff. Further, neither the police nor the Media Defendants threatened Plaintiff with any consequences if he refused to consent. Nothing in Plaintiff's encounter with the police supports his alleged belief that things could get rough for him if he did not consent. The encounter, as shown on both videotapes, depicts a rather calm and low key interview. There was no physical contact, yelling or raised voices, or any other objective indication that undue duress was occurring. Plaintiff has had several previous encounters with the police, having been arrested several times in the past. Therefore, for his own reasons, he not only voluntarily consented to the entry of police and the Media Defendants, but also made an intelligent and informed decision to do so because Plaintiff felt it was the best course of action under the circumstances. From Plaintiff's deposition testimony and the videotapes, it is clear that Plaintiff consented to the Media Defendants' entry and videotaping.

 Duress in the civil/commercial context is established where "it is shown that: (1) a person involuntarily accepted terms offered by another, (2) circumstances permitted no other alternative; and (3) the circumstances were the result of coercive acts of the other party." *Firestone v. Galbreath*, 895 F.Supp. 917, 931 (S.D.Ohio 1995) citing *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 551 N.E.2d 1249 (1990). The duress must be "proven to have been the result of the defendant's conduct and not by the plaintiff's necessities." *Blodgett*, 49 Ohio St.3d at 246, 551 N.E.2d 1249.

 As the videotapes and Plaintiff's deposition testimony make clear, Plaintiff voluntarily opened his door and allowed the police and Defendants to enter. He knew he had another alternative—he could have refused to allow the police in or he could have let the police in but not the Media Defendants. Plaintiff chose not to object to Defendants' presence or videotaping because he felt it was to his advantage to let everyone in and to allow the videotaping. Thus, Plaintiff's consent was motivated by his assessment of what would be best for him under the circumstances, i.e., by his own necessities. Neither the conduct of the police nor the Media Defendants caused Plaintiff any duress.

 Similarly, there is no evidence to support Plaintiff's claim that the Defendants' asserted undue influence over him. The elements of undue influence are: "1) a susceptible party; 2) another's opportunity to influence the susceptible party; 3) the actual or attempted imposition of improper influence; and 4) a result showing the effect of the improper influence." *Firestone*, 895 F.Supp. at 931, citing *West v. Henry*, 173 Ohio St. 498, 184 N.E.2d 200 (1962). Neither the videotapes nor Plaintiff's deposition testimony show any effort by the police, much less Defendants Fox and Barbour, to impose improper influence on Plaintiff.

While in many instances the issue of whether a plaintiff voluntarily consented to entry is a disputed factual question, the evidence in this case is unusually clear. Both the videotapes and Plaintiff's deposition testimony demonstrate that he consented to the entry of the police and the Defendants and to the Defendants' videotaping and that his consent was voluntary. Plaintiff's consent bars Plaintiff's claims for trespass or intrusion.

### Conclusion

For the reasons stated herein, there are no genuine issues of material fact in dispute and Defendants are entitled to judgment as a matter of law. Accordingly, the Motion of Defendants Fox and Barbour for Summary Judgment (Document # 17) is GRANTED.

IT IS SO ORDERED.

JUDGMENT ENTRY

Pursuant to the Memorandum of Opinion and Order of this Court, the Motion of Defendants Fox Television Network and Barbour–Langley Productions for Summary Judgment (Document # 17) is GRANTED.

IT IS SO ORDERED.