SUSTIN ET AL., APPELLANTS, *v.* FEE, APPELLEE.

[Cite as Sustin v. Fee (1982), 69 Ohio St. 2d 143.]

(No. 81-328—Decided February 10, 1982.)

144

*Thrasher, Dinsmore & Dolan Co., L.P.A., Mr. Dale H. Markowitz* and *Mr. David M. Ondrey,* for appellants.

*Messrs. Andrews & Todoroff* and *Mr. J. Melvin Andrews,* for appellee.

HOLMES, J. The gravamen of appellants' complaint is that appellee's action was a tortious intrusion upon their right of seclusion. In the leading case of *Housh* v. *Peth* (1956), 165 Ohio St. 35, this court recognized a cause of action for invasion of privacy based upon the wrongful intrusion upon a person's seclusion. In so doing, this court held, at paragraphs one and two of the syllabus:

"1. The right of privacy is the right of a person to be let alone, to be free from unwarranted publicity, and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned.

"2. An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."[4]

The scope of a person's liability for intrusion into another's seclusion is stated in Section 652B of the Restatement of Torts 2d, as follows:

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

Here, there is an additional factor present. The appellee, while conducting the surveillance, was a public official who

---

[4] Today the intrusion into a person's seclusion is recognized as but one of four separate branches of tortious invasion of privacy. These are set out in Section 652A of the Restatement of Torts 2d, at page 376, as follows:

"(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

"(2) The right of privacy is invaded by

"(a) unreasonable intrusion upon the seclusion of another * * *

"(b) appropriation of the other's name or likeness * * *

"(c) unreasonable publicity given to the other's private life * * *

"(d) publicity that unreasonably places the other in a false light before the public * * *."

See, also, Prosser on Torts (4 Ed.), 802, Sec. 117. The development of the right of privacy as a separate tort is chronicled in *Zacchini* v. *Scripps-Howard Broadcasting Co.* (1976), 47 Ohio St. 2d 224, reversed on other grounds (1977), 433 U. S. 562.

was acting within the scope of his official duties. Because of this status appellee was protected by the defense of official immunity. Official immunity requires a showing that the public official acted in bad faith or with a corrupt motive before liability can attach. See *Scot Lad Foods* v. *Secy. of State* (1981), 66 Ohio St. 2d 1, 8, and cases cited therein.[5]

Based upon the foregoing, it becomes apparent that resolution of this dispute requires a two-step analysis: did the appellee undertake the surveillance from bad faith or with a corrupt motive, and, if so, was the appellee's surveillance of the appellants highly offensive to a reasonable person? However, because of our resolution, we will consider only the first part of this question.

Additionally, the Court of Appeals reversed the trial court's judgment in this cause for failure to grant appellee a directed verdict or, in the alternative, a judgment notwithstanding the verdict. So, the focus of our inquiry is whether reasonable minds[6] could come to but one conclusion—that appellee did not act from bad faith or with a corrupt motive.

A review of the record leads us to the determination that reasonable minds could conclude only that appellee did not act from bad faith or with a corrupt motive. Appellee had appellants' house under surveillance on three occasions for approximately two hours. Although the appellee once brought binoculars, they were used solely to observe the kennel and not to intrude upon the privacy of appellants' lives.

Appellants argue that appellee could have obtained information about the commercial nature of their kennel in a less intrusive manner. Appellants assert that appellee could have discovered the information he sought by reading certain

---

[5] Appellee was performing duties which required the exercise of judgment and discretion. This was not a case where the public officer was performing ministerial acts. See, *e.g., Scot Lad Foods* v. *Secy. of State, supra,* at pages 8-9; *Maddox* v. *Astro Investments* (1975), 45 Ohio App. 2d 203; *Dalton* v. *Hysell* (1978), 56 Ohio App. 2d 109.

[6] The standard for a directed verdict and a judgment notwithstanding the verdict is the same. When either of these motions is made, "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion * * * ." Civ. R. 50(A)(4).

articles that had been printed about the kennel in the local press, or by examining appellants' records.

Evidence that there was a less intrusive manner for the appellee to obtain the desired information may well be supportive of an allegation that appellants suffered an invasion of their privacy or an allegation that the appellee acted in bad faith. However, it is not of itself sufficient to warrant a finding that the appellee acted in bad faith or with a corrupt motive. The record is devoid of evidence which would support such a finding.[7]

Consequently, the trial court erred in not granting appellee a directed verdict.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

W. BROWN, SWEENEY, LOCHER and KRUPANSKY, JJ., concur.

CELEBREZZE, C. J., and C. BROWN, J., dissent.

CLIFFORD F. BROWN, J., dissenting. In my view the evidence demonstrates that the township zoning inspector repeatedly visually surveyed the plaintiffs' premises with binoculars to observe a dog kennel operated by plaintiffs thereon. He refused to stop the practice despite being offered the same information he required, knowing his surveillance was causing the plaintiffs and their family great discomfort and anxiety. Since he had available much less obtrusive means of determining the actual use of the premises, the reasonableness, bad faith or corrupt motive of the zoning inspector's investigation was at issue, questions of fact requiring determination by a jury. *Alabama Electric Co-operative, Inc.,* v. *Partridge* (Ala. 1969), 225 So. 2d 848, 851 (whether insurer's investigation of a person asserting a claim was conducted within reasonable bounds was a question for the jury in an invasion of privacy action).

---

[7] Although not an exclusive listing, evidence that appellee's actions were taken to harass, rather than as part of a legitimate investigation, or that the investigation was a mere subterfuge to cover an intrusion into the privacy of appellants' lives, would have allowed the trial court to submit this case to the jury.

It is the duty of a trial court to submit an essential issue to the jury when there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue. *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215. That reasonable minds could reach different conclusions on the factual issues requiring jury determination is evinced by the eight jurors who rendered a verdict for plaintiffs, by the trial judge who submitted the case to the jury for its determination, and by the dissenting appellate judge who correctly observed "whether the conduct of appellant [defendant] was unreasonable or obtrusive was a jury question." These ten reasonable minds reached a conclusion different from the two appellate judges concurring in the rendition of final judgment for defendant. This differing of reasonable minds establishes jury issues.

The appellate court, in reversing the jury verdict for plaintiffs in this case, usurps the jury function. Accordingly, I dissent.

CELEBREZZE, C. J., concurs in the foregoing dissenting opinion.