FRIEND, APPELLANT, *v.* BRANKATELLI ET AL., APPELLEES.

(No. 47715—Decided July 2, 1984.)

*Michael I. Greenwald,* for appellant.
*Henry B. Fischer,* for appellees.

JACKSON, J. This is an appeal from a decision by the court of common pleas granting summary judgment to the defendants-appellees, who are public officials employed by the city of East Cleveland.

Appellant Donald Friend purchased a ten-suite apartment building at 1828 Windermere Avenue, East Cleveland, in 1979. A housing inspection performed at that time revealed numerous violations. In August 1980, the appellant was again cited for the same violations. On

September 15, 1980, the City Engineer issued an emergency order that the building be immediately vacated and that it either be repaired or demolished. The tenants were granted additional time to leave the premises until September 27, 1980. The ordered repairs were not accomplished.[1] The building was vandalized by persons unknown.

Appellant did *not* bring suit against the city of East Cleveland for wrongful demolition of his property. Instead, he filed suit against Mr. Brankatelli (City Engineer), Luther Walker (Chief Housing Inspector), and Alfred Neal (Housing Inspector). The appellees filed a motion for summary judgment which was granted. The final order of the trial court states as follows:

"On review of the file, court finds plaintiff failed to exhaust administrative remedies available to him, and that the complaint fails to state a justicible [*sic*] claim in that defendants are immune and plaintiff cannot collaterally attack in this action, failure to appeal administrative directives. Case dismissed with prejudice at plaintiff's costs."

Thus, the trial court entered judgment for the appellees for two reasons: (1) the appellant had failed to pursue administrative remedies; and (2) the appellees were immune from liability under the doctrine of "official immunity."

## I

The appellant assigns two errors for review, and contends, first, that the lower court erred in ruling that plaintiff had available to him administrative remedies from which an emergency order to vacate premises could be appealed and, secondly, that the lower court erred in ruling that appellant's complaint failed to set forth a justiciable claim in that appellees are immune from civil liability.

There is a qualified immunity from liability for public officials acting within the scope of official duties, in good faith, and without a corrupt motive. *Sustin* v. *Fee* (1982), 69 Ohio St. 2d 143 [23 O.O.3d 182]. This qualified immunity does not exist, however, where public officials intentionally cause the destruction of private property, on the ground that such property constitutes a public nuisance, unless the owner has been afforded the opportunity to obtain judicial review of the order declaring the property a nuisance. *Solly* v. *Toledo* (1966), 7 Ohio St. 2d 16 [36 O.O.2d 9]. Paragraphs three, four and five of the syllabus in the *Solly* case state:

"3. Anyone who destroys or injures private property in abating what legislative or administrative officials have determined to be a public nuisance does so at his peril, where there has been neither a previous judicial determination that such supposed nuisance is a public nuisance nor even an opportunity provided to the owner for an administrative hearing (with a judicial review thereof) on the question as to whether there is a public nuisance.

"4. In such an instance, when sued by the owner, the one destroying the

---

[1] The appellees' answer to the complaint alleges that the premises contained the following violations:

"Leading up to and on or about September 15, 1980, the apartment building located on the premises was in a very deteriorated condition and such condition was in fact an immediate hazard to human life and health in that numerous windows were broken throughout the building, broken windows were boarded instead of being repaired, the water supplied to the dwelling suites had been interrupted, the roof was leaking badly throughout, plaster in the ceilings was wet and sagging to the point where it could fall and injure someone, walls in the building were also wet, there was an odor in the building of mildew or dampness, and the building was infested with cockroaches, rats, and other vermin."

property may be held liable for damages caused by its destruction unless he alleges and proves and the trier of the facts finds that what he destroyed was a public nuisance and that its destruction was reasonably necessary for abatement of that nuisance.

"5. The owner of property is under no duty to bring an action to enjoin its threatened wrongful destruction, and failure to do so will not prevent recovery for damages caused by such destruction."

The text of the court's opinion in *Solly* reiterates that public officials may be held personally liable for such loss if the owner did not have the opportunity to take an administrative appeal from the decision to abate the alleged nuisance:

"Hence, even an officer, who destroys or injures private property in abating what legislative or administrative officials have determined to be a public nuisance, does so at his peril, where there has been neither a previous judicial determination that such supposed nuisance is a public nuisance nor even an opportunity provided to the owner for an administrative hearing (with a judicial review thereof) on the question as to whether there is a public nuisance. Annotation, 14 A.L.R. 2d 83 *et seq.*; 39 American Jurisprudence 464, Section 187. (Cf. *DiMaggio* v. *Mystic Bldg. Wrecking Co., Inc.* [1960], 340 Mass. 686, 166 N.E. 2d 213, where plaintiff, who neglected to take advantage of available administrative hearing, held barred from attacking administrative determination of public nuisance.)" *Solly, supra,* at 19.

Therefore, this court is persuaded that the trial court erred in finding that appellees are protected by the doctrine of "official immunity." If the appellant had no opportunity to obtain eventual judicial review of the administrative order, then the public officers acted "at their peril" in issuing this order, and bear the burden of proving that the property was in fact a public nuisance. "Official immunity," in a case such as this, has no separate application from the defense of failure to exhaust administrative remedies.

A case with similar facts is *Jackson* v. *Columbus* (1974), 41 Ohio App. 2d 90 [70 O.O.2d 92]. The city of Columbus had demolished a structure as a public nuisance after sending notice of an administrative hearing on the matter to the wrong address. The Court of Appeals for Franklin County held that, under *Solly,* the city bore the burden of proving that the building was a public nuisance, in a suit brought against it by the owner.

The case at bar is distinguishable from *Solly* and *Jackson* on two grounds. First, the defendants are public officials, not the municipality itself. Second, the administrative order by the city required appellant to vacate the premises. This order did not require the structure to be demolished.

The language of the *Solly* case is broad enough to encompass *any* injury to private property ordered without an opportunity for judicial review.[2] The administrative directive ordering the property to be vacated obviously injured the interests of the owner. Also, as noted above, the *Solly* case expressly made public officials subject to liability for their actions in connection with the destruction of private property.

Absent bad faith or corrupt motive, public officials are protected from liability for negligent or intentional injury to private property, if the owner has been afforded judicial review (perhaps

---

[2] Paragraph three of the syllabus of that case, quoted above, applies to "[a]nyone who destroys or *injures* private property" in abating an alleged public nuisance. (Emphasis added.)

preceded by administrative review) of the order abating the nuisance. The issue in the case at bar is whether such opportunity was afforded the appellant in this case.

The order to vacate was issued under a provision of the housing code, authorizing emergency vacation of premises. Ordinance No. 1345.05.[3] The ordinances of the city of East Cleveland permit the owner of premises to appeal a decision of any city official under the housing or building code to the Board of Building Code Appeals, and thence to the City Commission. Ordinance Nos. 1311.03 and 1345.08.[4] Decisions of the City Commission are appealable to the court of common pleas pursuant to R.C. 2506.01.

Therefore it is clearly demonstrated that the law provides appellant the opportunity for eventual judicial review of orders to vacate. Plaintiff-appellant, at page 5 of his brief in opposition to defendants' motion to dismiss, admits that he received notice of the City Engineer's order to vacate, and that the order to vacate was not enforced for twelve days. Thus, this case is distinguishable from *Jackson* v. *Columbus, supra,* where no effective notice was given. The trial court correctly determined that this suit is barred on account of the appellant's failure to pursue administrative remedies. Appellant's assigned errors are not well-taken.

Accordingly, the decision of the trial court is affirmed.

*Judgment affirmed.*

CORRIGAN, C.J., and NAHRA, J., concur.

---

[3] Ordinance No. 1345.05 states:

"Whenever, in the opinion of the Building Inspector, the condition of a structure or premises, or part thereof, constitutes an immediate hazard to human life or health,

APPENDIX

The Board of Building Code of Appeals is declared the Board of Appeals for the Housing Code, including Chapter 1345 of the Codified Ordinances:

"The Board of Building Code Appeals, as established by Chapter 1311, shall be the Board of Appeals for this Housing Code and its powers and duties and the procedures for appeal shall be as provided in Chapter 1311."

Ordinance No. 1311.03 authorizes an appeal to the Board of Appeals by "*any* person adversely affected by a decision of *any* City official made in the enforcement of *any* ordinance for which the Board of Building Code Appeals is designated as the Board of Appeals. * * *" This language is obviously broad enough to include appeal from emergency orders under Ordinance No. 1345.05. Ordinance No. 1311.03 provides:

"(a) Any person adversely affected by a decision of any City official made in the enforcement of any ordinance for which the Board of Building Code Appeals is designated as the Board of Appeals shall have the right to appeal to the Board of Building Code Appeals from such decision within ten days from the date notice of such decision was given or mailed to him, and to appear before the Board at a time and place fixed by the Board. Such appeal must be in writing. Failure to file a written appeal with the Board within the time prescribed shall constitute a waiver of the right of appeal. The Board shall have the power to approve, amend, modify or reverse any decision of such City official.

"(b) Any person adversely affected by a decision of the Board of Building Code Appeals shall also have the right to

---

he shall declare a case of emergency and shall order immediate vacation of the structure or premises, or part thereof."

[4] See Appendix attached.

appeal to the City Commission from such decision within ten days from the date notice of such decision was given or mailed to the appellant, and to appear before the City Commission at a time and place fixed by the City Commission. Such appeal must be in writing. Failure to file a written appeal with the City Commission within the time prescribed shall constitute a waiver of the right of appeal. The City Commission shall have the power to approve, amend, modify or reverse any decision of the Board."