CELEBREZZE, APPELLANT, *v.* DAYTON NEWSPAPERS, INC. ET AL., APPELLEES.

(No. 53125—Decided July 5, 1988.)

*Don C. Iler,* for appellant.
*James E. Pohlman, Robert E. Portune* and *Kathleen McDonald O'Malley,* for appellees.

GREY, J. This is an appeal from the Cuyahoga County Court of Common Pleas. Appellant James P. Celebrezze, an Associate Justice on the Ohio Supreme Court in 1984, was running for re-election. Appellee, Dayton Newspapers, Inc., is the publisher of the Journal Herald newspaper, and appellee Milton Priggee is a political cartoonist who works for Dayton Newspapers.

On August 23, 1984, the Journal Herald published a Priggee cartoon. The cartoon depicted an automobile with a license plate reading "Celebrezze" being driven down a street. Two persons are leaning out of the automobile firing machine guns at a storefront labeled "Ohio Bar Association." On the sidewalk in front of the storefront one man lies dead in a gutter and another is being shot down. A

small skunk sits on the curb holding its stomach.█

On March ˙6, 1985, Celebrezze brought this action asserting three claims: defamation, intentional infliction of emotional distress, and a "false light" theory of invasion of privacy. The trial court held that Ohio does not recognize a claim for invasion of privacy under a false light theory and dismissed that claim. Later, the court granted summary judgment in favor of the defendants on the other two counts.

Celebrezze appeals, designating three assignments of error, which we shall treat in reverse order.

Assignment of Error 3:

"The trial court erred in dismissing plaintiff's cause of action for 'false light' invasion of privacy."

The trial court, in dismissing the false light claim, relied on, and quoted from, *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, 6 OBR 421, 453 N.E. 2d 666. *Yeager* is only one of a line of cases beginning with *Housh* v. *Peth* (1965), 165 Ohio St. 35, 59 O.O. 60, 133 N.E. 2d 340, where a cause of action for invasion of privacy was recognized for the first time. The Restatement of Torts sets out four branches of invasion of privacy. See 3 Restatement of the Law 2d, Torts (1965) 376, Section 652A(2). In *Zacchini* v. *Scripps Howard Broadcasting Co.* (1976), 47 Ohio St. 2d 224, 1 O.O. 3d 129, 351 N.E. 2d 454, the Ohio Supreme Court discussed the common-law right of privacy and adopted the Restatement principle in Section 652C, Appropriation of Name or Likeness. The *Zacchini* court went on to add, as dicta:

"The effect of this holding, and of that in *New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254, is that the press has a privilege to report matters of legitimate public interest even though such reports might intrude on matters otherwise private. See Restatement of Torts 2d (Tentative Draft No. 13, 1967), Section 652F. In cases involving claims of false light, that privilege may be lost by publication of knowing falsehoods, or in reckless disregard of the truth. * * *" *Id.* at 234, 1 O.O. 3d at 134-135, 351 N.E. 2d at 461.

In *Sustin v. Fee* (1982), 69 Ohio St. 2d 143, 23 O.O. 3d 182, 431 N.E. 2d 992, the Supreme Court again cited the Restatement and adopted a second branch of the Restatement principles, the "unreasonable intrusion" theory.

A year later, in *Yeager, supra,* the court discussed a false light claim. The court's complete language on this issue is as follows:

"In his next argument, appellant contends that the picketing and handbilling incident invaded his privacy by impugning his character under a 'false light.'

"This court has recognized a cause of action for invasion of privacy in *Housh* v. *Peth* (1956), 165 Ohio St. 35 [59 O.O. 60]. However, this court has not recognized a cause of action for invasion of privacy under a 'false light' theory of recovery. Under the facts of the instant case, we find no rationale which compels us to adopt the 'false light' theory of recovery in Ohio *at this time. * * *"* (Emphasis supplied.) *Id.* at 372, 6 OBR at 424, 453 N.E. 2d at 669-670.

The Supreme Court's language in *Yeager* is couched in the qualifying terms emphasized above. Comparing

this limiting language in *Yeager* with the unqualified and unequivocal language of *Zacchini* and *Sustin* which adopted parts of the Restatement, we cannot conclude that the Supreme Court has yet spoken with such finality as to forever foreclose a false light cause of action in Ohio.

Since the Ohio Supreme Court has begun to explicitly adopt part of the Restatement principles, and has not yet explicitly adopted or rejected other parts, then an inferior tribunal must follow the Supreme Court's lead. This was done in *Rinehart* v. *Toledo Blade Co.* (1985), 21 Ohio App. 3d 274, 21 OBR 345, 487 N.E. 2d 920, and *Wheeler* v. *Yocum* (Mar. 25, 1986), Franklin App. No. 85AP-828, unreported, where the courts found as in *Yeager* "no rationale" which would compel the adoption of a false light theory. Implicit in *Yeager, Rinehart,* and *Wheeler* is the idea that, in a proper case, such a rationale might be presented.

In this case, the trial court followed that same procedure. After citing and quoting from *Yeager,* the trial court held:

"Because the facts in the instant case parallel those in *Yeager,* the Court here declines to adopt the false light theory in this case."

We find no error in the trial court's ruling that since the facts were like those in *Yeager,* the result should be the same as in *Yeager, supra.* Assignment of error three is overruled.

Assignment of Error 2:
"The trial court erred in summarily dismissing plaintiff's cause of action for intentional infliction of emotional distress, holding that an absolute First Amendment immunity to a libel claim automatically protects a defendant from a claim for intentional infliction."

The recent decision of the United States Supreme Court in *Hustler Magazine* v. *Falwell* (1988), 485 U.S. ____, 99 L. Ed. 2d 41, 108 S. Ct. 876, is directly on point. Both Falwell and Celebrezze are public figures. Both Hustler Magazine and Dayton Newspapers published cartoons, which if taken literally were defamatory, but as caricatures could not be reasonably construed as a statement of believable fact. The court stated:

"We conclude that public figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false statement of fact which was made with 'actual malice,' *i.e.,* with knowledge that the statement was false or with reckless disregard as to whether or not it was true. * * *" *Id.* at ____, 99 L. Ed. 2d at 52, 108 S. Ct. at 882.

Construing the evidence most strongly in appellant's favor, there is no showing of malice. Appellees admit that the purpose of the cartoon was to politically embarrass Celebrezze and to prevent him from being re-elected, but such a motive does not constitute legal malice. *Garrison* v. *Louisiana* (1964), 379 U.S. 64. Assignment of error two is not well-taken and is overruled.

Assignment of Error 1:
"The trial court erred in granting summary judgment for the defendants when the plaintiff presented some evidence of actual malice.

"1. In the instant case, the moving defendants failed to meet their burden of proving that there is no genuine fact issue as to actual malice.

"2. Where each side presents some evidence, summary judgment must be denied since factual issues exist for jury determination."

Appellant and appellees rely on *Anderson* v. *Liberty Lobby, Inc.* (1986), 477 U.S. 242. Appellant argues that

the trial court used the wrong standard in applying *Anderson,* and the appellees insist the trial court's action is supported by *Anderson.* This is understandable since, as noted in Justice Rehnquist's dissent, the decision in *Anderson* sets forth several standards (which is no standard at all):

"* * * The Court affords lower courts no guidance whatsoever as to what, if any, difference the abstract standards that it propounds would make in a particular case." *Id.* at 271 (Rehnquist, J., dissenting).

Regardless of whether one uses a convincing clarity standard or the ordinary Civ. R. 56 summary judgment standard, there simply is no genuine issue of law. One element of a cause of action for libel is that the defamatory publication be an assertion of a fact. There is no such assertion here. No reasonable person could conclude from viewing Priggee's cartoon that he was accusing Celebrezze of the criminal act of murder or attempted murder. The scene depicted was exaggeration, hyperbole, much as in *Matalka* v. *Lagemann* (1985), 21 Ohio App. 3d 134, 21 OBR 143, 486 N.E. 2d 1220, where one cartoon portrayed the presiding officer of the city council as an auctioneer selling off the council vote to the highest bidder, and another cartoon portrayed council as a prostitute willing to sell her favors. The decision in *Matalka, supra,* relied on *Greenbelt Coop. Publishing Assn., Inc.* v. *Bresler* (1970), 298 U.S. 6, which characterizes these types of expressions as "rhetorical hyperbole" and "a vigorous epithet * * *." *Id.* at 14. The cartoon in this case was likewise rhetorical, perhaps allegorical, but not capable of being interpreted as being factual or defamatory. *Gertz* v. *Robert Welch, Inc.* (1974), 418 U.S. 323.

Appellant argues that there is a jury issue on appellees' state of mind, that is, that there is a jury question on the issue that defendants were motivated by actual malice. However, defendants' motives are clearly established in their deposition. In the dispute between Chief Justice Frank D. Celebrezze and the Ohio State Bar Association, defendants took the side of the bar association. The intent of the cartoon was to ridicule the Chief Justice and by implication his brother and Associate Justice, James Celebrezze. The purpose of the cartoon was to prevent James Celebrezze's reelection, and to assist in his opponent's being elected.

This conduct is not malice, or perhaps should be described as "political malice" which is protected. In *Garrison, supra,* at 73-74, the Supreme Court said:

"* * * Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred; even if he did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth. Under a rule like the Louisiana rule, permitting a finding of malice based on an intent merely to inflict harm, rather than an intent to inflict harm through falsehood, 'it becomes a hazardous matter to speak out against a popular politician, with the result that the dishonest and incompetent will be shielded.' Noel, Defamation of Public Officers and Candidates, 49 Col. L. Rev. 875, 893 (1949). * * *"

The entry of summary judgment in a defendant's favor is appropriate in a libel action if it appears, upon the uncontroverted facts of record that *any one* of the following critical elements of a libel case cannot be established with convincing clarity. *Dupler* v. *Mansfield Journal Co.* (1980), 64 Ohio St. 2d 116, 18 O.O. 3d 354, 413 N.E. 2d 1187. First, there must be the assertion of a false statement of fact; second, that

the false statement was defamatory; third, that the false defamatory statement was published by defendants; fourth, that the publication was the proximate cause of the injury to the plaintiff; and fifth, that the defendants acted with the requisite degree of fault. *Id.*

Thus, once the court below found, as a matter of law, that Priggee's cartoon portrayed an expression of the defendant's opinion rather than a statement of fact, as required in *Dupler, supra,* the trial court was compelled to grant summary judgment to defendants since there was no genuine issue as to Celebrezze's libel claim. Celebrezze's first assignment of error is without merit and is overruled.

*Judgment affirmed.*

COOK, P.J., and HOFSTETTER, J., concur.

LAWRENCE GREY, J., of the Fourth Appellate District; ROBERT E. COOK, P.J., of the Eleventh Appellate District; and EDWIN T. HOFSTETTER, J., retired, of the Eleventh Appellate District, sitting by assignment.

APPENDIX