[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Plaintiff-appellant George King appeals from a summary judgment rendered in favor of defendants-appellees Cashland, Inc. and Christopher Lipsey. King contends that the trial court improperly granted summary judgment because the evidence created a genuine issue of material fact with regard to his claims for invasion of privacy and violation of the Ohio Consumer Sales Practices Act ("OCSPA"). He also contends that the trial court erred by denying his motion to amend his complaint.
We conclude that the trial court erred by granting summary judgment because King established the existence of a genuine issue of material fact with regard to his claim of invasion of privacy. We find, however, that the trial court did not abuse its discretion by denying King's motion to amend his complaint.
The judgment of the trial court is Reversed, and this cause isRemanded for further proceedings in accordance with this opinion.
 I
Defendant-appellee, Cashland, Inc., located in Dayton, Ohio, is engaged in the business of providing small unsecured loans to its customers. Cashland permits its customers to write post-dated checks for specified loan amounts, plus a service fee, whereupon Cashland loans the customer the agreed upon sum of money. The customer's check is then held by Cashland for a certain length of time before being deposited and submitted to the customer's bank for payment.
In 1998, plaintiff-appellant, George King, obtained a loan from Cashland in the amount of $500.[1] As part of the loan application, King executed an agreement containing the following language:
 I agree that Cashland, Inc. may contact any person(s) on my original application and on this application. I waive any privacy claims against Cashland, Inc.
The application listed King's sister and his friend as references. King was also required to provide the name and address of his employer.
On the agreed date, Cashland deposited King's checks. The checks were submitted to King's bank, but were returned to Cashland with a notation indicating that King's checking account lacked sufficient funds to cover the check amounts. Cashland then began attempting to collect the amount owed for the dishonored checks.
On April 26, 1999, King filed suit against Cashland and its employee, Christopher Lipsey. The complaint alleged that Cashland and Lipsey had committed the tort of invasion of privacy and had violated the Ohio Consumer Sales Practices Act. The complaint sought punitive damages.
In an order dated August 30, 1999, the trial court set a trial date of February 28, 2000. The parties engaged in pretrial discovery. The case was referred to mediation, which took place on December 17, 1999. The mediation was unsuccessful. Thereafter, on December 21, 1999, Cashland and Lipsey filed a motion for summary judgment. King then filed a motion for leave to file an amended complaint. He filed his memorandum in opposition to the motion for summary judgment on January 31, 2000.
The trial court denied King's motion to amend and granted the motion for summary judgment. King appeals from the summary judgment rendered against him.[2]
 II
King's First Assignment of Error is as follows:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.
King contends that the trial court improperly granted summary judgment because he established the existence of a genuine issue of material fact whether the actions of Cashland and Lipsey constituted an invasion of privacy. He also contends that the trial court erred by granting summary judgment because he established that Cashland, as a matter of law, is governed by the Ohio Consumer Sales Practices Act, and that it violated the provisions of that Act.
The standard of review in summary judgment cases is well-established. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370, citation omitted.
 A. Invasion of Privacy
King contends that he presented evidence that Cashland invaded his privacy, while Cashland contends that King waived his right to pursue an invasion of privacy claim against it.
We begin with the issue of waiver. As Cashland argues, a party to a contract can waive a known right. Griffith v. Linton (1998),130 Ohio App.3d 746, 751. In this case, King signed a contract that specifically stated that he waived his right to file "any privacy claims against Cashland."
Ohio courts follow the generally accepted rule that contract terms that violate public policy are unenforceable. Sammarco v. Anthem Ins.Cos., Inc. (1998), 131 Ohio App.3d 544, 551. This rule stems from the "* * * legal principle which declares that no one can lawfully do that which has the tendency to be injurious to the public welfare," Garretsonv. S.D. Myers, Inc. (1991), 72 Ohio App.3d 785, 788. The rule must be employed judiciously. See, Gugle v. Loeser (1944), 143 Ohio St. 362, paragraph one of the syllabus ("[a]greements voluntarily and fairly made between competent persons are usually valid and enforceable, and the principle that agreements opposed to public policy are not enforceable should be applied cautiously and only in circumstances patently within the reasons on which that doctrine rests.").In this case, there is evidence in the record, which must be viewed in a light most favorably to the responding party, King, that in the attempt to collect money to cover the dishonored checks, Lipsey made between forty and fifty phone calls to King. During the phone calls, Lipsey asked King if he was "related to Rodney King," and called him a "punk ass mother fucker" and "faggot." Cashland also called King's sister and friend at least two times and informed them that a warrant had been issued for King's arrest because of the bad checks.[3] Cashland called King's landlord, and also sent his employer letters and faxes, concerning the debt.
Public policy demands that debt collectors act in a reasonable manner when pursuing payment of debts. See, Housh v. Peth (1956), 165 Ohio St. 35, paragraph three of the syllabus. Construing the evidence most strongly in favor of King, Cashland's collection tactics exceeded the bounds of reasonableness.
Cashland argues that King waived his privacy rights when he signed the loan agreement containing the language quoted at page 3 of this opinion. Cashland argues that King's waiver of "privacy claims" against Cashland should be construed as extending to more than just claims arising out of Cashland's contacting certain persons listed in the loan application, authorized by the sentence preceding the waiver of "privacy claims." Cashland argues that by waiving "privacy claims" against Cashland, King waived all rights of privacy, including his right to be free from intrusions upon his personal privacy, no matter how offensive or outrageous. We conclude that a construction of the waiver permitting Cashland to pursue, with impunity, unlimited abusive and harassing methods of debt collection is repugnant to public policy, and therefore unenforceable.
In Housh v. Peth, supra, the Supreme Court of Ohio recognized that individuals have a right to privacy and a cause of action for invasion of that right by another. The three actionable types of invasion of privacy recognized in Ohio are: (1) the unwarranted appropriation or exploitation of one's personality; (2) the publicizing of one's private affairs with which the public has no legitimate concern; and (3) the wrongful intrusion into one's private activities. Id., at paragraph two of the syllabus.In his appellate brief, King limits his argument to the "wrongful intrusion" type of invasion of privacy.[4] The Ohio Supreme Court, in defining the scope of liability for this type of intrusion, adopted the reasoning of the Restatement of Torts, which states that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Sustin v. Fee (1982), 69 Ohio St.2d 143, 145, quoting Restatement of the Law 2d, Torts (1977), Section 652B.
In regard to the relationship of debt collection and the right to privacy, the Supreme Court has held that "[a] creditor has a right to take reasonable action to pursue his debtor and persuade payment." Housh,supra, at paragraph three of the syllabus. However, the Court stated that " * * * a campaign to harass and torment the debtor * * * " is conduct that " * * * falls outside the bounds of reasonable methods which may be pursued in an effort to collect a debt * * *," and may be found to constitute an invasion of privacy rights. Id. at 41 and paragraph four of the syllabus. This court has held that the issue of whether the actions taken by a creditor are reasonable "requires a factual determination." Howard v. City Loan Savings Co. (1986),31 Ohio App.3d 193, 195.
We conclude, after construing the evidence most strongly in King's favor, that reasonable minds could reach differing conclusions as to whether Cashland's and Lipsey's actions constitute an actionable invasion of King's privacy. Therefore, we find that the trial court erred in rendering summary judgment on this issue.
B. Ohio Consumer Sales Practices Act
We next address King's claim that Cashland and Lipsey violated the Ohio Consumer Sales Practices Act (OCSPA). The trial court's decision to grant summary judgment hinged on its finding that the transaction between Cashland and King was not governed by the provisions of the OCSPA.
Pursuant to R.C. 1345.02(A), the OCSPA is designed to protect consumers with respect to "consumer transactions." R.C. 1345.01 defines consumer transactions as follows:
 (A) "Consumer transaction" means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply of these things. "Consumer transaction" does not include transactions between persons defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers. * * *
A reading of R.C. 5725.01 reveals that dealers in intangibles are exempted from the Act. A dealer in intangibles includes "every person who keeps an office or other place of business in this state and engages at such office or other place in the business of lending money." R.C.5725.01(B).
King contends that Cashland is not a dealer in intangibles because it has failed to comply with the statutory requirements for such entities. Specifically, King claims that Cashland is not entitled to claim the status of a dealer in intangibles because it fails to file annual returns required by R.C. 5725.14. We do not find this argument persuasive.
R.C. 5725.14 provides, in part, that "[e]ach dealer in intangibles shall return to the tax commissioner * * * annually, a report exhibiting in detail, and under appropriate heads, his resources and liabilities * * *." This statutory provision is for the purpose of providing a basis for the assessment of an intangibles tax against the dealer. The failure to file such a report results in the assessment of a monetary penalty. R.C. 5725.17.
The failure of Cashland to supply appropriate tax reports does not subject it to liability under the OCSPA. There is no statutory provision purporting to strip Cashland of its status as a dealer in intangibles as a result of its failure to comply with this reporting requirement. Its failure to comply merely subjects it to a fine. As defined for the purposes of the OCSPA, Cashland is a dealer in intangibles, and is exempted from the coverage of the Act.[5]
Therefore, the trial court did not err in rendering summary judgment on this issue.
The First Assignment of Error is sustained in part and overruled in part.
 III
King's Second Assignment of Error states:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING MR. KING'S MOTION FOR LEAVE TO FILE AN AMENDED AND SUPPLEMENTAL COMPLAINT.
King contends that the trial court abused its discretion by denying his motion to amend his complaint.
The Ohio Supreme Court has summarized the principles governing appellate review of a trial court's denial of a motion to amend a complaint. A reviewing court's role is to determine whether the trial judge's decision was an abuse of discretion. State, ex rel. Wargo v.Price (1978), 56 Ohio St.2d 65, 66. "The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Reviewing the record in light of this standard, we find that King has failed to demonstrate an abuse of discretion. By the time the motion to amend was filed, the action had already been pending for eight months and discovery had been conducted. The record indicates that the defendants had responded to King's interrogatories and requests for the production of documents. It also shows that the parties took depositions of Lipsey, two other employees of Cashland, and King on October 11, 1999. Extensive proceedings had already been conducted on the merits of the original complaint; in fact, the matter had been submitted to mediation. Under the circumstances, the trial court could properly reject an attempt to interject a new issue into the proceedings.
The Second Assignment of Error is overruled.
 IV
King's First Assignment of Error having been sustained in part, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 ______________________ FAIN, J.
WOLFF and YOUNG, JJ., concur.
[1] King wrote two checks to Cashland in the amount of $287.50. Each check was for one-half the loan amount of $500 plus a total service fee of $75.
[2] An Amicus Curiae Brief was filed by Edgemont Neighborhood Coalition. The Coalition urges this court to reverse the judgment of the trial court.
[3] There is no evidence in the record to indicate that a warrant was ever issued.
[4] King insinuates that the actions of Cashland and Lipsey would make them liable under the the "false light" branch of the tort of invasion of privacy. However, we note that Ohio does not recognize this theory of liability. Greenwood v. Taft, Stettinius Hollister (1995),105 Ohio App.3d 295, 303, footnote 7.
[5] We note that dealers in intangibles are subject to the OCSPA under very limited conditions, which are not applicable to this case. See, R.C. 1315.44 and 1315.41.