[Cite as *Crawford v. Tivener*, 2016-Ohio-6982.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CAROLYN CRAWFORD | JUDGES:<br>Hon. Sheila G. Farmer, P.J.<br>Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 15CA22 |
| WILLIAM TIVENER, ET AL. | |
| Defendants-Appellees | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Mount Vernon Municipal
                                                         Court, Case No. 15CVH0061

JUDGMENT:                                     Affirmed in part, Reversed in part,
                                                         Vacated in part, and Remanded

DATE OF JUDGMENT ENTRY:      September 22, 2016

APPEARANCES:

For Defendants-Appellees                 For Plaintiff-Appellant

ZACHARY DIMARCCO                      PHILLIP D. LEHMKUHL
Critchfield, Critchfield & Johnson Ltd.   101 North Mulbwerry St.
10 S. Gay St., P.O. Box 469              Mount Vernon, Ohio 43050
Mount Vernon, Ohio 43050

*Hoffman, J.*

{¶1} Plaintiff-appellant Carolyn Crawford appeals the October 5, 2015 and October 30, 2015 Journal Entries entered by the Mount Vernon Municipal Court, Civil Division, which awarded damages and attorney fees to defendants-appellees William Tivener, et al. on their counterclaim.

STATEMENT OF THE CASE AND FACTS

{¶2} On January 2, 2015, Appellant filed a Small Claims Complaint against Appellees in the Mount Vernon Municipal Court, seeking unpaid rent and damages. Upon Appellees' motion, the trial court transferred the matter to the Civil Division of the Court on January 28, 2015. Appellees filed an answer and counterclaim. In their counterclaim, Appellees asserted claims of wrongful eviction; violation of R.C. 5321.16(B), which governs the procedure for security deposit; trespass; trespass to chattels; conversion; and invasion of privacy. Appellees sought damages and attorney fees. Appellant filed an answer to the counterclaim as well as an amended complaint.

{¶3} Appellant filed a motion for partial summary judgment on Count II of Appellees' counterclaim, the violation of R.C. 5321.16(B), and a motion for judgment on the pleadings as to Count IV of the counterclaim, trespass to chattels. Appellees voluntarily dismissed Count II of their counterclaim. The trial court overruled Appellant's motion for judgment on the pleadings.

{¶4} The matter came on for bench trial on August 19, 2015. The following evidence was adduced at trial.

{¶5} Appellant is the owner of a number of rental properties, including a residential property located at 1104 West Chestnut Street, Mount Vernon, Ohio ("the

Premises"). On April 7, 2014, Appellees entered into a rental agreement with Appellant to lease the Premises, for a period of one year, commencing on May 1, 2014. Rent was due on or before the first of each month. After the fifth of the month, a daily late fee was assessed.

{¶6} Appellees paid the September, 2014 rent on September 21, 2014. Thereafter, Appellees failed to pay the rent for the months of October, November, and December, 2014. Appellant contacted Appellee William Tivener in early November, 2014, on the cell phone number he had given her, which was actually the phone number for his employer, United Pre-Cast. When she asked him about his plans to bring the rent current, Appellee William Tivener was "non-committal". On November 24, 2014, Appellant mailed a letter to Appellees requesting they contact her to discuss plans to bring the rent current. She did not receive a response. Appellee William Tivener testified he contacted Appellant after receiving the November 24, 2014 correspondence and informed her he would pay the past due rent, but did not know where he would get the money to do so.

{¶7} On or about December 15, 2014, Appellant called Appellee William Tivener at the United Pre-Cast number at which she had previously contacted him. The individual who answered the phone informed Appellant Appellee William Tivener was no longer employed with the company, and reluctantly provided Appellant with a cell phone number. When Appellant called the cell phone, Appellee William Tivener answered, but would not speak to her. Appellant acknowledged she never initiated legal eviction proceedings against Appellees.

{¶8} Appellee William Tivener recalled he returned to the Premises one evening in December, 2014, following Christmas dinner at his grandmother's house, and found

the locks had been changed.  He believed this occurred on December 23, 2014, but was "not a hundred percent sure on the dates". Tr. at 60.  Appellee accessed the Premises through a basement window and began to remove his belongings.  He explained, at that time, the majority of his property was still inside the Premises, and he moved most of the property out on that day.  During his cross-examination, Appellee William Tivener stated he moved most of his belonging out on December 26, 2014.  Tr. at 67.  Appellee testified he was locked out of the Premises from December 26, 2014, to December 31, 2014.  Tr. at 64.  He was shocked and angry when he found the locks had been changed.

{¶9}    Appellant testified, on December 26, 2014, she learned Appellees were no longer living at the Premises and sent Trent Gullett, the property manager and maintenance man for her properties, to investigate.  Gullett found the front door of the Premises standing open and the hardware on the door, including the lock, removed.  Gullett also found the lock on the back door had been damaged.  The temperature on that day was well below zero with the wind chill, and the heat had been shut off.  Gullett announced his presence, but did not receive any response.  Gullett's wife made a video of the interior of the Premises on her cell phone, which shows the house dirty and in a state of disrepair.  Every room was filled with clutter, however, there was no clothing, personal items, or food in the house.  The only furniture left in the Premises was a broken dresser, an end table, and a couple of mattresses, but there was no bedding.

{¶10} Appellant instructed Gullett to wait a day or two to see if anyone returned to the Premises.  When Gullett returned, he found an opened basement window through which someone had entered the Premises.  He purchased new locks and other items with

which to secure the Premises on December 29, 2014. Gullett replaced the hardware and lock on the front door as well as the damaged lock on the back door.

**{¶11}** After finding the Premises had been secured, Appellee William Tivener contacted Appellant to inquire about retrieving his possession. Appellant advised him to contact Gullett. During the conversation, Appellee William Tivener informed Appellant he and his family no longer wanted to occupy the Premises and indicated they were living elsewhere. Appellee William Tivener arranged to meet Gullet at the Premises on December 31, 2014, at which time Appellee William Tivener removed some, but not all, of the property remaining at the Premises. Gullett advised him anything left would be considered trash and placed in a dumpster.

**{¶12}** Brandy Calkins testified Appellee William Tivener's mother was married to her father for twenty years. Appellee William Tivener's mother passed away on September 26, 2014. Months later, on December 5, 2014, Calkin's father passed away. At the time of her father's death, Calkins had been residing at his home at 57 Columbus Road, Mount Vernon, Ohio. Calkins returned to the Columbus Road residence on December 5, 2014, and found Appellees and their children had moved in. Appellees informed Calkins they had been evicted. During the month of December, Appellees' children were taken to and returned from school at the Columbus Road residence. Calkins noted sometime before Christmas, 2014, she assisted Appellees in moving some of their clothing and personal items from the Premises to the Columbus Road residence.

**{¶13}** At the conclusion of the evidence, the trial court ordered the parties to file their individual itemizations of damages along with a brief summary of the evidence which supported their respective positions.

**{¶14}** Via Journal Entry filed October 5, 2015, the trial court granted judgment in favor of Appellant and against Appellees in the amount of $3,905.73 for unpaid rent, late fees, and labor and materials for repairs less Appellees' security deposit. The trial court granted judgment in favor of Appellees on their counterclaim as follows: $0.00 for missing items of personal property and $0.00 for lost food on their wrongful eviction claim; $100.00 for nominal damages and $0.00 for punitive damages on their trespass claim; $93.54, representing four days of rent for the period Appellees were locked out of the Premises, on their trespass to chattels claim; $0.00 for missing items of personal property and $0.00 for punitive damages on their conversion claim; and $100.00 for nominal damages and $0.00 for punitive damages on their invasion of privacy claim. The trial court awarded attorney fees to Appellees and scheduled the matter for an evidentiary hearing on October 30, 2015, to determine the amount of attorney fees to be awarded.

**{¶15}** Attorney Zachary DeMarco of Critchfield, Critchfield & Johnston, Ltd. represented Appellees in this matter and testified on their behalf at the evidentiary hearing. Attorney DeMarco explained the charges on an account statement, explaining the invoice covered the period from Appellees' initial consultation with Critchfield, Critchfield & Johnston on January 7, 2015, regarding in the Small Claims Complaint filed against them, through August 19, 2015, the date of the trial. Attorney DeMarco stated he and an associate spent 97 hours on the case. The attorney added his time was billed at an hourly rate of $125.00, but noted the bill was discounted to an effective rate of $60.00/hour.

**{¶16}** Via Journal Entry filed October 30, 2015, the trial court awarded attorney fees to Appellees and against Appellant in the amount of $5,851.21.

{¶17} It is from the October 5, 2015, and October 30, 2015 Journal Entries Appellant appeals, raising the following as error:

{¶18} "I. THE TRIAL COURT ERRED WHEN IT AWARDED DEFENDANTS $93.54 REPRESENTING 4 DAYS OF RENT FOR THE PERIOD THE DEFENDANTS WERE LOCKED OUT OF THE PREMISES.

{¶19} "II. THE TRIAL COURT ERRED BY AWARDING DEFENDANTS $100 ON THE TRESPASS CLAIM OF THEIR COUNTERCLAIM.

{¶20} "III. THE TRIAL COURT ERRED BY AWARDING DEFENDANTS THE SUM OF $100 AS NOMINAL DAMAGES FOR INVASION OF PRIVACY.

{¶21} "IV. THE TRIAL COURT ERRED BY FINDING THAT PLAINTIFF HAD WRONGFULLY EVICTED DEFENDANTS.

{¶22} "V. THE TRIAL COURT ERRED BY AWARDING EXCESS ATTORNEY FEES OF $5,821.21 [SIC]."

I

{¶23} In her first assignment of error, Appellant contends the trial court erred in awarding Appellees $93.53, which represented four days of rent for the period during which Appellees were locked out of the Premises.

{¶24} In the fourth count of their counterclaim, Appellees asserted a claim of trespass to chattels. Therein, Appellees alleged they were dispossessed of their personal possessions located within the Premises for at least seven days, and sought damages in the amount of $169.16, representing seven days of rent.

**{¶25}** "A trespass to chattel occurs when one intentionally dispossesses another of their personal property." *Conley v. Caudill,* 4th Dist. Pike No. 02CA697, 2003-Ohio-2854, ¶ 7, citing 75 American Jurisprudence 2d (1991), Trespass, Section 17, at 23.

**{¶26}** Section 217 of the Restatement 2d, Torts, states a trespass to a chattel may be committed by intentionally:

> (a) dispossessing another of the chattel, or

> (b) using or intermeddling with a chattel in the possession of another.

1 Restatement of the Law 2d, Torts, Section 217 (1979).

**{¶27}** According to Section 218 of the Restatement 2d, Torts, a trespasser to chattel is liable "if, but only if," one of the following occurs:

> (a) he dispossesses the other of the chattel, or

> (b) the chattel is impaired as to its condition, quality, or value, or

> (c) the possessor is deprived of the use of the chattel for a substantial time, or

> (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest.

1 Restatement of the Law 2d, Torts, Section 218 (1979).

**{¶28}** Section 221 defines the various ways in which one may dispossess another of a chattel and provides a dispossession may be committed by intentionally:

> (a) taking a chattel from the possession of another without the other's consent, or

(b) obtaining possession of a chattel from another by fraud or duress,

or

(c) barring the possessor's access to a chattel, or

(d) destroying a chattel while it is in another's possession, or

(e) taking the chattel into the custody of the law.

1 Restatement of the Law 2d, Torts, Section 221 (1979).

**{¶29}** In the instant action, the trial court's finding Appellant liable to Appellees on their claim of trespass to chattels was apparently based upon a determination Appellant intentionally dispossessed Appellees of their chattels by barring Appellees access to them. We find Appellees' inability to access the property was created by the need to secure the premises after having been vacated by Appellees. The door to the premises was found open and the locks removed or damaged. We do not find such action by Appellant equates to barring Appellees access to their chattels. Appellees did not present any evidence the condition, quality, or value of the property was impaired as a result of the dispossession. The personal property which remained in the Premises was left behind when Appellees vacated the Premises in early December, 2014. When Appellee William Tivener returned to the Premises on December 31, 2014, Gullett advised him any items not removed would be considered trash and be disposed of accordingly. Appellee William Tivener only retrieved a portion of the property. Gullett subsequently removed 38 bags of trash left in the Premises by Appellees. Appellant did not deprive Appellees of the chattels for a substantial time.

**{¶30}** "[A]n award of nominal damages in the absence of proof of actual damages may be made in an action for trespass to chattels when there has been a dispossession."

*Mercer v. Halmbacher*, 9th Dist. App. No. 27799, 2015-Ohio-4167, citing 1 Restatement of the Law 2d, Torts, Section 218, comment d (1965) ("Where the trespass to the chattel is a dispossession, the action will lie although there has been no impairment of the condition, quality, or value of the chattel, and no other harm to any interest of the possessor. He may recover at least nominal damages for the loss of possession, even though it is of brief duration and he is not deprived of the use of the chattel for any substantial length of time.").

**{¶31}** We find there was insufficient evidence to establish a claim of trespass to chattels. When Appellee William Tivener returned to the Premises and found the locks had been changed, he contacted Gullett who immediately arranged to meet Appellees in order for them to remove their remaining property. Appellees did not present any evidence the condition, quality, or value of their property was impaired. Appellee William Tivener only removed a portion of the property which remained in the Premises, knowing anything he did not remove would be discarded. Furthermore, Appellees were not deprived of the use of their property for a substantial time.

**{¶32}** Based upon the foregoing, we find the trial court erred in granting judgment for Appellees on their trespass to chattels claim.

**{¶33}** Appellant's first assignment of error is sustained.

II

**{¶34}** In her second assignment of error, Appellant maintains the trial court erred in awarding Appellees $100 in damages on the trespass claim of their counterclaim. We agree.

**{¶35}** In the third count of their counterclaim, Appellees asserted a claim of trespass and sought nominal damages in the amount of $50, as well as punitive damages in the amount of $250. The trial court awarded Appellees $100 in nominal damages on the trespass claim, and $0.00 in punitive damages.

**{¶36}** "A common law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue." *Apel v. Katz*, 83 Ohio St.3d. 11, 19, 1998-Ohio-420 (Citation omitted).

**{¶37}** R.C. 2901.01(L) defines the term "privilege" as "an immunity, license, or right conferred by law, or bestowed by express or implied grant, or arising out of status, position, office, or relationship, or growing out of necessity." "The existence of a privilege in a given case is necessarily dependent upon the particular facts and circumstances of that case." *Cleveland v. Dickerson*, 8th Dist. Cuyahoga Nos. 101782, 101783, 2016 -Ohio- 806, citing *Dayton v. Moore* (Mar. 25, 1993), 2d Dist. Montgomery No. 13369, 1993 WL 81966, *3.

**{¶38}** Upon learning Appellees were no longer living at the Premises, Appellant sent Trent Gullett, the property manager and maintenance man for her properties, to investigate. Gullett found the front door of the Premises standing open and the hardware on the door, including the lock, removed. Gullett also found the lock on the back door had been damaged. The temperature on that day was well below zero with the wind chill and the heat had been shut off. The condition of the Premises led Gullett to believe Appellees had abandoned the Premises. As such, Gullett secured the Premises.

**{¶39}** Based upon the circumstances, we find Gullett had a privilege to enter the Premises which arose out of necessity. We find the trial court erred in granting judgment in favor of Appellees on their trespass claim. Accordingly, we vacate the trial court's judgment and award of damages.

**{¶40}** Appellant's second assignment of error is sustained.

III

**{¶41}** In her third assignment of error, Appellant submits the trial court erred in awarding Appellees $100 in nominal damages on their invasion of privacy claim. Specifically, Appellant argues the trial court made inconsistent findings.

**{¶42}** In order to establish a claim for invasion of privacy, a plaintiff must show: (1) intrusion upon the plaintiff's seclusion or solitude, or into his or her private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; or (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. *Smith v. Pierce Twp.,* 12th Dist. Clermont No. CA2013–10–079, 2014-Ohio-3291, ¶ 44.

**{¶43}** "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person. *Sustin v. Fee,* 69 Ohio St.2d 143, 145, 431 N.E.2d 992 (1982). The intrusion must be into a plaintiff's private affairs and the plaintiff must have a "reasonable expectation of privacy" in the area allegedly intruded. *Turner v. Shahed Ents.,* 10th Dist. Franklin No. 10AP–892, 2011-Ohio-4654, ¶ 21.

**{¶44}** The intrusion must be wrongful, as well as done in a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. *Roe ex rel. Roe v. Heap,* 10th Dist. Franklin No. 03AP–586, 2004-Ohio-2504, ¶ 82. " 'Wrongful' does not require that the intrusion itself be wrongful in the sense that there is no right to make any intrusion. Rather, 'wrongful' may relate to the manner of the making of the intrusion * * *." *Id.,* quoting *Strutner v. Dispatch Printing Co.,* 2 Ohio App.3d 377, 378–379 (10th Dist.1982).

**{¶45}** In its October 5, 2015 Journal Entry, the trial court noted:

A landlord's invasion of a tenant's privacy may result in a Court awarding damages. An injured party may recover for an invasion of privacy if the tenant can prove a wrongful intrusion into his or her private activities which would cause outrage, mental suffering, shame or humiliation to a person of ordinary sensibilities. *Id.* at 4.


**{¶46}** The trial court found Appellee William Tivener was "shocked and angry" over the lockout, and Appellee Catherine Tivener "cried over" it and was remorseful about their inability to pay the rent, but concluded, "[t]he Court cannot say the evidence established that the lockout would cause outrage, mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Id.* at 5. Nonetheless, despite this conclusion, the trial court awarded Appellees $100 as nominal damages. We find the trial court erred in awarding damages for invasion of privacy when it specifically found Appellees did not establish a claim for such.

**{¶47}** Appellant's third assignment of error is sustained.

VI

{¶48} In her fourth assignment of error, Appellant argues the trial court erred in finding she had wrongfully evicted Appellees.

{¶49} In the first count of their counterclaim, Appellees raised a claim for wrongful eviction.   Therein, Appellees alleged, [o]n or about December 23, 2014, [Appellant] wrongfully excluded [Appellants] from the Premises by changing the locks and locking [Appellees] out of the Premises, in violation of R.C. 5321.15(A).   Appellees claimed they suffered damages in the amount of $100, and were entitled sought attorney fees pursuant to R.C. 5321.15(C).   In their Post-Trial Damages Brief, Appellees sought $800 for loss of personal property, $100 for loss of food, and $5,862.50 for attorney fees as a result of the wrongful eviction.

{¶50} R.C. 5321.15(A) provides:

(A) No landlord of residential premises shall initiate any act, including termination of utilities or services, exclusion from the premises, or threat of any unlawful act, against a tenant, or a tenant whose right to possession has terminated, for the purpose of recovering possession of residential premises, other than as provided in Chapters 1923., 5303., and 5321. of the Revised Code.

{¶51} In its October 5, 2015 Journal Entry under the subsection "Trespass to Chattels", the trial court noted, "Because the Court believes [Appellees] were *wrongfully evicted* from the Premises, judgment for four days rent should be granted to [Appellees]." *Id.* at 4 (Emphasis added).   However, under the "Wrongful Eviction and Conversion" subsection, the trial court does not address the wrongful eviction claim.   In the

"Conclusion" section of it judgment entry, the trial court granted judgment in favor of [Appellees] on their counterclaim as follows: "1. **Wrongful Eviction**: $0.00 for missing items of personal property; $0.00 for lost food; * * * 3. **Trespass to Chattels**: $93.54 representing four days of rent for the period [Appellees] were locked out of the Premises". *Id.* at 6.

**{¶52}** We find the trial court could properly award Appellees' damages for the days Appellees were locked out under their wrongful eviction claim despite this award being listed in the "Trespass to Chattels" section. However, we disagree with the amount of the trial court's award.

**{¶53}** In its October 5, 2015 Journal Entry, the trial court awarded Appellees $93.54, representing four days of rent for the period during which Appellees were locked out of the Premises. The trial court did not make a finding as to what dates were encompassed in that four day period. We find the evidence presented does not support the trial court's finding Appellees were locked out of the Premises for four days.

**{¶54}** Appellant instructed Gullett to go to the Premises on December 26, 2014, to investigate the situation. Gullett found the front door open; the locks and doorknob removed. Gullett also found the lock on the back door had been damaged. Gullett secured the doors using metal strapping. Over the next few days, Gullett checked the Premises. During one visit, he discovered someone had entered the home through a basement window. On December 29, 2014, Gullett purchased and installed new locks. Sometime thereafter, Appellee William Tivener contacted Gullett to arrange a time for him to be let into the Premises to remove the rest of Appellees' personal property. Gullett and Appellee met on December 31, 2014.

{¶55} Based upon the record, we find the trial court did not err in finding Appellant wrongfully evicted Appellees from the Premises. However, because we find Appellant excluded Appellees from the Premises for only two days, we vacate the trial court's award of $93.54, and enter final judgment in the amount of $46.77, representing two days of rent.

{¶56} Appellant's fourth assignment of error is sustained in part and overruled in part.

V

{¶57} In her fifth assignment of error, Appellant asserts the trial court erred in awarding excessive attorney fees to Appellees. We agree.

{¶58} Pursuant to R.C. 5321.15(C), "A landlord who violates [R.C. 5321.15(A)] is liable in a civil action for all damages caused to a tenant, or to a tenant whose right to possession has terminated, together with reasonable attorney fees." A tenant's entitlement to an award of attorney fees, pursuant to R.C. 5321.04(B) and/or R.C. 5321.15(C), is within the discretion of the trial court. See *Meacham v. Miller* (1992), 79 Ohio App.3d 35, 42, 606 N.E.2d 996; *Thomas v. Papadelis* (1984), 16 Ohio App.3d 359, 476 N.E.2d 726, paragraph two of the syllabus. See, also, *Lewis v. Romans* (1980), 70 Ohio App.2d 7, 433 N.E.2d 622, paragraph one of the syllabus. Such an award must be predicated on a determination of the reasonable value of services rendered, in light of the relevant provisions in DR2-106(B). *Meacham v. Miller,* at 42, 606 N.E.2d 996.

{¶59} We have examined the transcript of the hearing on attorney fees and the invoice itemizing the services provided by Appellees' trial counsel and the charges associated thereto, and find the trial court erred in awarding Appellees $5,851.21, in

attorney fees. The $5,851.21 figure includes not only Attorney DeMarco's fees for pursuing Appellees' counterclaim, but also for defending Appellant's complaint. We find Appellees are not entitled to the fees for defending Appellant's complaint under R.C. 5321.15(C). Accordingly, we vacate the award of attorney fees and remand the matter to the trial court to determine the amount of fees associated with Attorney DeMarco's pursuit of Appellees' counterclaim only.

**{¶60}** Appellant's fifth assignment of error is sustained.

**{¶61}** The judgment of the Mount Vernon Municipal Court is affirmed in part, reversed in part, vacated in part and remanded for further proceeding in accordance with this Opinion and the law.

By: Hoffman, J.

Farmer, P.J. and

Delaney, J. concur