[Cite as *Dalton v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-5941.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ROBERT DALTON

      Plaintiff

      v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

      Defendant

Case No. 2012-01457

Judge Patrick M. McGrath
Magistrate Holly True Shaver

DECISION

{¶ 1} On June 14, 2013, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On July 1, 2013, plaintiff filed a response. Defendant's July 9, 2013 motion for leave to file a reply is GRANTED instanter. The motion for summary judgment is now before the court for a non-oral hearing.

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to

have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} Plaintiff began his employment with defendant in 2005. Initially, plaintiff worked as a psychology assistant 2 at the Mansfield Correctional Institution. Approximately one year later, plaintiff transferred to the Corrections Reception Center (CRC). Plaintiff was a member of the SEIU/1199 union. In 2008, plaintiff became a union delegate. In February 2009, plaintiff's employment was terminated for using his work email for personal reasons, conducting political activity during work hours, and intimidating a witness in a union proceeding. Plaintiff filed a grievance regarding his termination and after an arbitration hearing, he was reinstated to his position in January 2010. During the period of time between his initial termination and reinstatement, plaintiff obtained his professional psychology license.

{¶ 5} Shortly after plaintiff returned to work, he was approached by his supervisor, Robert Hammond, Psy.D, Chief of Mental Health Services. When Dr. Hammond attempted to speak with plaintiff about the need to move into a psychologist position based upon attainment of licensure, plaintiff first told him that he could not speak to him on a state phone and needed to call him back on a "secure line." During his deposition, plaintiff testified that it was his practice to use his cell phone outside the institution to discuss anything personal or related to the union, due to his experience of defendant recording his phone messages and obtaining permission to search his state email account with regard to his first arbitration proceeding. When plaintiff did discuss the matter with Dr. Hammond, he refused to take on a psychologist position, stating that it would make him a "target" and that Central Office would "come after" him. (Defendant's Exhibit I.)

{¶ 6} On March 1, 2010, plaintiff sent an email to Hugh Quill, Director of the Department of Administrative Services, wherein plaintiff requested "emergency

assistance in getting out of work on administrative leave because of an investigation." (Defendant's Exhibit D.)  In the email, plaintiff explained that his employment had been terminated the year prior, that he had won his job back via arbitration, and that management had engaged in a pattern of retaliation toward him.  In the email, plaintiff stated that his investigative interview had been edited and manipulated to "frame" him; that his allegations were being investigated by the Inspector General's office; that his personal email account had been hacked by one of defendant's employees; that defendant had purposely delayed providing him with a "man-down" alarm for a month; and that he was worried that one of defendant's employees would "set him up" by placing drugs in his office.  Plaintiff sought guidance from Quill because of his concern that he was suffering from retaliation from defendant.  (Plaintiff's Exhibit 18.)

{¶ 7} Based upon his conversations with plaintiff and the email that plaintiff had sent to Quill, Dr. Hammond requested that plaintiff undergo an independent medical examination (IME) with a mental health professional to determine his fitness for duty. Dr. Hammond explained his concerns in writing to Ginny Lamneck, Warden at CRC. (Defendant's Exhibit I.)   Dr. Hammond specifically requested: "a [p]ersonality assessment to include MMPI-2 and MCM1.  The goal of the assessment is to answer whether or not there is a dysfunctional behavioral profile that impedes [plaintiff's] work in a correctional setting.  It is essential to know if his current reactiveness is within the normal limits of having been a part of a recent investigation, or if it is suggestive of either an Axis 1 related paranoia or Axis 2 condition."  (Defendant's Exhibit I.)

{¶ 8} On April 14, 2010, plaintiff was notified that he was scheduled for an IME to be conducted by Michael T. Farrell, Ph.D.  On May 7, 2010, Dr. Farrell conducted an IME of plaintiff, but plaintiff did not submit to any objective personality testing, including the MMPI-2 and MCMI tests.  Although plaintiff testified that he believed the personality testing to be optional, Dr. Farrell noted in his report that plaintiff refused to undergo objective personality testing on two bases:   one, because plaintiff himself had

administered such tests multiple times, plaintiff felt that it would be "inappropriate" for him to undergo such testing; and two, plaintiff found such tests to be "intrusive." Dr. Farrell concluded in his report that a definitive opinion regarding a psychological diagnosis as well as his psychological ability to work as a psychology assistant and/or psychologist could not be made given plaintiff's refusal to comply with any objective personality testing. (Joint Exhibit GG, page 22.)

{¶ 9} As a result of plaintiff's failure to undergo objective personality testing, he was charged with failing to follow post orders, administrative regulations, policies, or directives, and interfering with, failing to cooperate in, or lying in an official investigation or inquiry. Plaintiff's employment was terminated as a result of his failure to fully cooperate during the IME. Plaintiff filed a grievance about his termination, but the grievance was denied, and after an arbitration hearing, his termination was upheld.

{¶ 10} Plaintiff asserts claims of perceived disability discrimination and violation of privacy. Plaintiff asserts that defendant had no reasonable basis to order him to submit to an IME; that subjecting him to an IME was based upon a perceived disability; and that undergoing the IME violated his right to privacy.

## I. PERCEIVED DISABILITY DISCRIMINATION

{¶ 11} R.C. 4112.02 provides, in pertinent part, that: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the * * * disability * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 12} In Ohio, "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981).

{¶ 13} To establish a prima facie case of disability discrimination, a plaintiff must demonstrate:  1) that he was disabled; 2) that an adverse employment action was taken by his employer at least in part because plaintiff was disabled, and 3) that plaintiff, even though disabled, can safely and substantially perform the essential functions of the job in question.  *City of Columbus Civil Service Commission v. McGlone*, 82 Ohio St.3d 569, 571 (1998).  R.C. 4112.01(A)(13) states: "'Disability' means a physical or mental impairment that substantially limits one or more major life activities, * * * ; or *being regarded as having a physical or mental impairment*."  (Emphasis added.)  "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C.S. Section 12102(3)(A).

{¶ 14} Plaintiff asserts that since he was sent to a psychological IME, defendant perceived that he suffered from a mental impairment, and the act of sending him for an IME constitutes perceived disability discrimination.  However, The Tenth District Court of Appeals has stated "[t]he fact that [plaintiff] was sent for a psychological evaluation is not evidence that [plaintiff] was perceived to have a psychological handicap."  *Peters v. Ohio Dept. of Natural Resources*, 10th Dist. No.  03AP-350, 2003-Ohio-5895, ¶ 24.

{¶ 15} In addition, "The Sixth Circuit has explained that an employer's perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled.  *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 810-11 (6th Cir. 1999), *cert. denied*, 530 U.S. 1262, 120 S. Ct. 2718, 147 L. Ed. 2d 983 (2000).  The Sixth Circuit has also explained that a request that an employee obtain a medical exam 'cannot itself prove perception of a disability because it does not prove that the employer perceives the employee to have an impairment that substantially limits one or more of the employee's major life activities.'

*Id.* at 811." *Marziale v. BP Prods. N. Am.*, S.D.Ohio No. 1:05cv741, 2007 U.S. Dist. LEXIS 90730 (November 27, 2007).

{¶ 16} Plaintiff further argues that the 2008 amendments to the Americans with Disabilities Act and R.C. 4112.01(A)(13) no longer require proof that the disability or perceived disability "substantially limits one or more major life activities." However, it is undisputed that Dr. Farrell was unable to determine whether or not plaintiff could safely and substantially perform the essential functions of his job inasmuch as plaintiff failed to undergo the requested objective psychological exams. Without plaintiff's full compliance with the IME, plaintiff cannot establish the third prong of the prima facie case: that he, despite his perceived disability, could safely and substantially perform the essential functions of the job in question. Therefore, the only reasonable conclusion to be drawn is that plaintiff has failed to state a prima facie claim of perceived disability discrimination.

{¶ 17} Moreover, even if plaintiff could state a prima facie case of perceived disability discrimination, defendant asserts that it had both a reasonable basis and lawful authority to send plaintiff to an IME. Ohio Administrative Code Section 123:1-30-03 states:

{¶ 18} "(A)   An appointing authority may require that an employee submit to medical or psychological examinations for purposes of disability separation or a reinstatement from disability separation. The appointing authority shall select one or more licensed practitioners to conduct the examinations.

{¶ 19} "(B)   Prior to any examination, the appointing authority shall supply the examining practitioner with facts relating to the perceived disabling illness, injury or condition. The appointing authority shall also supply physical and mental requirements of the employee's position;   duty statements;   job classification specifications; and position descriptions. * * *

{¶ 20} "(D)  Employee's failure to appear for examination.  An employee's refusal to submit to an examination, the unexcused failure to appear for an examination, or the refusal to release the results of the examination amounts to *insubordination, punishable by the imposition of discipline up to and including removal. * * *"*  (Emphasis added.)

{¶ 21} Dr. Hammond testified in his deposition that he believed that the language that plaintiff used in his email to Quill, along with conversations that he had with plaintiff raised some "red flags" regarding plaintiff's mental state.  According to Dr. Hammond, he recommended an IME because "I wanted to be able to clarify is, you know, is there a problem that's going to keep this individual from being able to work."  (Hammond Depo., page 39.)

{¶ 22} Construing the facts most strongly in favor of plaintiff, the only reasonable conclusion is that defendant acted reasonably and complied with the procedures as outlined in OAC 123:1-30-03 in sending plaintiff to an IME.  Accordingly, sending plaintiff to an IME was not a pretext for discrimination.  Therefore, defendant is entitled to judgment as a matter of law on plaintiff's claim of perceived disability discrimination.

## II.  INVASION OF PRIVACY

{¶ 23} With regard to plaintiff's claim for invasion of privacy, four varieties of this cause of action are recognized under Ohio law:  1) wrongful intrusion upon the seclusion of another; 2) public disclosure of one's private affairs; 3) unwarranted appropriation of one's personality; and 4) publicity that places another in a false light. *See Housh v. Peth*, 165 Ohio St. 35 (1956), paragraph two of the syllabus; *Welling v. Weinfeld*, 113 Ohio St. 3d 464, 2007-Ohio-2451, syllabus.

{¶ 24} Plaintiff alleges that a psychological IME and an MMPI-2 test are "highly invasive forays into the most private thoughts, emotions and reasoning of a person." (Complaint at ¶ 22.)   Plaintiff asserts that by subjecting him to a psychological IME,

including the MMPI-2 test, defendant intruded upon his seclusion. In order to establish such a claim, one must prove a "wrongful intrusion into one's private activities in a manner that outrages or causes mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Peitsmeyer v. Jackson Twp. Bd. of Trustees*, 10th Dist. No. 02AP-1174, 2003-Ohio-4302, ¶ 26. "To be actionable, [this] type of invasion of privacy must be predicated upon an unreasonable intrusion into the private life of another." *Strutner v. Dispatch Printing Co.,* 2 Ohio App.3d 377, 380 (1982).

{¶ 25} There is no dispute that plaintiff did not undergo the MMPI-2 test. Therefore, his invasion of privacy claim based upon the requirement to take an MMPI-2 test fails as a matter of law. With regard to the psychological IME itself being a wrongful intrusion into plaintiff's seclusion, inasmuch as defendant sent plaintiff to an IME as authorized by OAC 123:1-30-03, the only reasonable conclusion is that the IME was not "wrongful." Therefore, defendant is entitled to judgment as a matter of law on plaintiff's wrongful intrusion claim.

{¶ 26} With regard to plaintiff's claim of public disclosure of one's private affairs, plaintiff testified in his deposition that defendant disseminated the report from his IME to Ken Confer, a nurse at DRC. However, to establish a prima facie claim of invasion of privacy for the public disclosure of private affairs, a plaintiff must show: "1) that there has been a public disclosure; 2) that the disclosure was of facts concerning the private life of an individual; 3) that the matter disclosed would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; 4) that the disclosure was intentional; and 5) that the matter publicized is not of legitimate concern to the public." *Roe v. Heap*, 10th Dist. No. 03AP-586, 2004-Ohio-2504, ¶ 53, citing *Killilea v. Sears, Roebuck & Co.*, 10th Dist. No. 85AP-467 (Dec. 3, 1985.) Construing the evidence most strongly in plaintiff's favor, plaintiff has not shown that the results of his IME were ever publicly disclosed. Moreover, plaintiff has not shown that any statements made during his IME would not be subject to a qualified privilege. *See Hamrick v. Wellman Prods.*

*Group*, 9th Dist. No. 03CA0146, 2004-Ohio-5477, citing *Evely v. Carlon Co.*, 4 Ohio St.3d 163 (1983). Accordingly, the only reasonable conclusion is that defendant is entitled to summary judgment as a matter of law on plaintiff's claims for invasion of privacy.

{¶ 27} For the foregoing reasons, the court finds that there are no genuine issues as to any material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment shall be granted.

_____
PATRICK M. MCGRATH
Judge



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ROBERT DALTON

Plaintiff

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

Defendant

Case No. 2012-01457

Judge Patrick M. McGrath
Magistrate Holly True Shaver

<u>JUDGMENT ENTRY</u>

{¶ 28} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Ashley L. Oliker
Eric A. Walker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Daniel H. Klos
4591 Indianola Avenue
Columbus, Ohio 43214

002
Filed August 26, 2013
Sent to S.C. Reporter April 30, 2014